| 39 | 217 |
|----|-----|
| 62 | 143 |
| 39 | 217 |
| 65 | 52 |
| 65 | 226 |
| 39 | 217 |
| 67 | 17 |
| 39 | 217 |
| 72 | 597 |
| 39 | 217 |
| 73 | 307 |
| 39 | 217 |
| 76 | 270 |

FRANCIS W. BOLLES, EXECUTOR, *vs.* FREDERICK M. SMITH AND OTHERS.

It is a general rule in the construction of wills, that where a legacy is given to two or more persons by name, to be equally divided among them, and one of them dies before the testator, his share will become intestate; but where the legacy is to two or more as a class, the share of a deceased legatee goes to the survivor or survivors. Also that joint legatees take as a class, and that legatees who are tenants in common do not.

These rules however yield to the manifest intention of the testator as gathered from the whole will.

Where a testator gave a sum to his widow during her life, to be paid semi-annu-

Bolles *v.* Smith.

ally, a certain quantity of wood to be delivered to her annually prepared for her use, and the use of a horse to carry her to church; and also gave several pecuniary legacies to other relatives; and gave all the residue of his estate to *A, B,* and *C,* sons of his deceased brother *R,* equally, they paying all the other legacies; and it appeared that they were all of the sons of *R,* that they had lived with the testator from boyhood, giving him their time and labor with no other compensation than their support, that the testator had no lineal heirs and no brothers or sisters living, and that all his other nephews and neices had been provided for by other legacies, it was held that *A, B* and *C* took as a class, and that, *A* having died before the testator, his share went to *B* and *C.* The will gave a pecuniary legacy to a niece, who died in the life of the testator without lineal heirs. Held that the amount went into the residuum.

Whether a church is capable of taking a legacy for the purpose of keeping up a fence around the testator's lot in the grave-yard; *quære.*

PETITION to the Superior Court in New London county, by the executor of the will of Avery Smith, for advice as to the construction of the will; reserved upon facts found, for the advice of this court. The case is sufficiently stated in the opinion.

*Crump,* for the petitioner.

*Halsey* and *Chadwick,* for F. M. and V. W. Smith.

*Lippitt,* for the heirs of Daniel Smith.

*Woodward,* for the heirs of Hannah Ayres.

CARPENTER, J. We are asked to give a construction to the will of Avery Smith. The will, omitting the formal parts, is as follows:

"I give and devise unto my beloved wife, Emeline H. Smith, the sum of two hundred and fifty dollars per year during her natural life, to be paid to her semi-annually, and the use of the dwelling-house, garden, and out-buildings about it, where I now dwell, during her natural life; and the household fur‑ niture in the house I give to her forever, and also four cord‑ of wood per annum, to be cut and split suitable for her stove and piled up in the wood-house; and also the carriage I now own, and the use of a horse to go to meeting at least twice a month.

" I give and devise unto Frederic M. Smith, Valentine W. Smith, and Timothy W. Smith, sons of my late brother, Roswell Smith, and to their heirs and assigns forever, equally, the residue of my estate, both real and personal, by their paying the legacy bequeathed to my wife, and also the legacies hereinafter named.

" I give to Helena Smith, daughter of my late brother Roswell Smith, the sum of two thousand dollars. I give to the heirs of my late brother Daniel Smith, the sum of five hundred dollars. I give to the heirs of my late sister Hannah Ayers, the sum of five hundred dollars. I give to my nephew, Francis Avery Bolles, the sum of five hundred dollars.

" The above legacies given to the heirs of my late brother, Daniel Smith, and my late sister, Hannah Ayers, and my nephew, Francis Avery Bolles, to be paid in one year after my decease, and that to Helena Smith to be paid in equal instalments in three and five years after my decease, with interest.

" I give for fencing, and keeping the same in repair, the lot owned by me in the grave-yard near the stone church, eighteen dollars a year forever, or three hundred dollars to be paid at one time, to the church now worshipping in said stone church, for said purpose of fencing and keeping said fence before mentioned in repair."

The first question arises under the residuary clause. Timothy W. Smith, one of three brothers to whom the residuum was given by the will, died during the life-time of the testator; and the question is, whether the share that he would have taken, had he survived, has become intestate estate, or goes to the survivors.

It is a general rule of construction that where a legacy is given to two or more persons, *nominatim*, to be equally divided among them, and one of them dies before the testator, his share will become intestate ; but where the legacy is to two or more as a class, the share of a deceased legatee goes to the survivor or survivors. *Primâ facie* joint legatees take as a class; otherwise where the legacy is given to them as tenants in common. All these rules however yield to the manifest intention of the testator, as gathered from the whole will, viewed in the light of the surrounding circumstances.

Our purpose is to discover the presumed intention of the testator.

. The legatees are described as " sons of my late brother, Roswell Smith; " and the case shows that they were all of his sons. If there was nothing else in the case it would be clear that they would take as a class. But the will names all the sons, and provides that they shall take equally. That, alone, indicates an intention that they should take as tenants in common. Thus far the language used by the testator gives no certain indication of his will in this respect. We must therefore look further for his intention.

The first clause gives to his wife an annuity of two hundred and fifty dollars per year, payable semi-annually during life; and then provides that four cords of wood shall be furnished her annually, cut, split, and piled in the wood-house ready for use ; and the use of a horse to go to church twice a month. Following the residuary clause are several pecuniary legacies. He then disposes of the residue to his three nephews, sons of his brother Roswell, " upon their paying the legacy bequeathed to my wife, and also the legacies hereinafter named." From this it is apparent that the obligation imposed upon the devisees to pay the other legacies, and provide for the widow, is a joint obligation. There is no ground for saying that each one was to pay one-third of the pecuniary legacies ; and in respect to the other duties imposed, they cannot be conveniently separated. It would be absurd to contend that the testator intended that each one separately should furnish one-third of the firewood, and in like manner furnish a horse for attending church twice a month.

The only condition, therefore, upon which the legacy could take effect, was a joint obligation to be assumed by the legatees. That clearly indicates that the testator intended that it should be a joint legacy. The fact that the legatees are named, and are to have an equal interest, will hardly overcome the presumption arising from the fact that they are also spoken of as a class, and that, as such, a joint duty devolves upon them, as a condition to their enjoyment of the legacy. It is true that by the law of Connecticut the survivors, in or-

dinary cases of joint tenancy, do not take the whole estate. But the argument does not depend upon the *jus accrescendi*. If they are joint tenants, *primâ facie* they take as a class. If they take as a class the lapsed legacy goes to the survivors. ·

In the next place we will briefly consider the circumstances and conditions of the testator, in respect to his relatives and the natural objects of his bounty. He had no lineal heirs, and no brothers or sisters living. His nearest relatives were nephews and nieces, children of two brothers and one sister. The children of his brother Daniel lived in Wisconsin; the children of his sister, Hannah Ayer, lived in the state of New York. The sons of his brother Roswell had lived with the testator from boyhood, giving him their time and labor in his business, and without compensation therefor except their living, and their services had materially assisted in making the estate held by him when he made his will, and when he died. Under these circumstances it was natural and just that he should give the bulk of his property to them. His other relatives had been provided for specially, and he evidently had given them all that he intended they should have. The balance of his property, whether more or less, he manifestly intended should descend to these nephews. Had the will been made after the death of Timothy, we see no reason to doubt that the same property would have been given to the surviving brothers, and upon the same terms and conditions. Had he contemplated the death of any one of them during his lifetime, it is highly probable that he would have made express provision that the survivors should take the whole. Be that as it may, experience and observation teach us that the condition and circumstances of the testator may fairly be presumed to have influenced his mind to this course; and when we look at the language of the will, and find that it will bear that construction, as well, at least, as any other, we cannot hesitate to adopt it as the true one.

The pecuniary bequest of $2,000 to Helena Smith, who died before the testator without lineal heirs, is not, either in whole or in part, intestate estate, but having lapsed, it is a part of the residuum, and goes to the residuary legatees. 2 Redfield on Wills, 442.

The only remaining question is, whether the church, to which was given a legacy for the purpose of fencing the testator's lot in the grave-yard, and keeping the fence in repair, is capable of taking for that purpose. There are some interesting questions involved in this branch of the case, and which are by no means free from difficulty. But as they have not been discussed by any of the counsel who have argued the case in behalf of the respective parties, we are unwilling to decide them so as to establish a precedent controlling future cases. Without discussing the subject, therefore, we shall advise the Superior Court that the executor may safely pay the legacy of three hundred dollars, or the annuity of eighteen dollars to the church designated.

In this opinion the other judges concurred.