## JOHN D. WHEELER AND OTHERS vs. FRANK W. FELLOWES AND OTHERS.

A testator, whose children were three sons, to the elder of whom he had deeded a building lot, by his will gave each of his younger sons a building lot, and directed that the residue, after a life use of a portion by his widow, should be divided into three equal parts, one of which should go to each of his sons in fee. He afterwards made a codicil in which he gave the two building lots to trustees for his two younger sons respectively during their lives, they to have the rents and profits, and on their deaths their widows to have the same for their lives. The

Wheeler v. Fellowes.

codicil then provided as follows:—"Whenever the youngest of my grandchildren shall attain the age of eighteen years the respective shares, the income of which is given to my sons, shall be divided in fee equally among their respective children then living, and if any of them shall then have deceased leaving children or other descendants, then such children or other descendants shall take the share which would have belonged to his or her deceased parent or ancestor had he or she been then living." Held—

1. That the residuum intended by the codicil was the same with that intended by the will and did not take in the fee of the two building lots given by the will.

2. That by the youngest grandchild who should attain the age of eighteen years, was meant, not the youngest that should be born, but the youngest living at the death of the testator.

3. But that the gift in fee was void in any view as contravening our statute against perpetuities, since the parties who were to take on the youngest grandchild becoming eighteen years of age, were to be the descendants of the testator then living, who might be neither persons in being at the testator's death nor their immediate issue.

Some of the real estate devised by the clause in question was situated in the state of New York. Held that the devise was equally obnoxious to the statute of that state, which provides that "the absolute power of alienation shall not be suspended by any limitation or condition whatever for a longer period than during the continuance of not more than two lives in being at the creation of the estate."

A power given to trustees to sell real estate devised in contravention of our statute against perpetuities does not save it, since the proceeds would have to be re-invested and held under the same trust.

[Argued June 5th—decided July 22d, 1884.]

SUIT for the settlement of the rights of parties interested under a will and for the distribution of a trust fund; brought to the Superior Court. Facts found and case reserved for advice. The case is fully stated in the opinion.

*S. E. Baldwin*, for the plaintiffs.

*F. W. Fellowes*, for the defendants.

PARK, C. J. In the year 1862 James Fellowes, of the town of New Haven, whose children were three sons, made his will; in which, after making provision for his widow during her life, and after devising a building lot on Whitney Avenue to each of his two younger sons to make them equal in this respect to his elder son, to whom he had pre-

viously deeded a building lot upon the same avenue, he divided all the residue of his property, both real and personal, into three parts, and gave one of the parts to each of his three sons in fee. Two years afterwards he made a codicil, in which he put into the hands of trustees the two building lots on Whitney Avenue, given in the will to his younger sons, and gave each of them, respectively, the rents and profits of the same lot devised to him in the will, during his life, and on his decease to his widow during her life.

The codicil then proceeds as follows:—" All the rest and residue of my property I give, devise and bequeath to my executors, in trust for the purposes following, to wit: to divide the same into three equal parts or shares, and therefrom to pay over quarterly the rents, issues and profits of one of the shares to my son Richard S. Fellowes during the term of his natural life; to pay over the rents, issues and profits of the second of the said shares quarterly to my son, Samuel M., during the term of his natural life, and after his decease to his present wife, if she shall survive him, during the term of her natural life; and to pay over the rents, issues and profits of the third of said shares quarterly to my son, Frank W., during the term of his natural life, and after his decease to his present wife, if she shall survive him, during the term of her natural life. Whenever the youngest of my grandchildren shall attain the age of eighteen years the respective properties, estates, or shares, the income of which is devised to my sons and their present wives for life by this codicil as aforesaid, shall be divided in fee equally among their respective children then living, and if any of them shall then have deceased leaving children or other descendants, then such children or other descendants shall take the share that would have belonged to his or her deceased parent or ancestor had he or she then been living; provided however, that such distribution shall in no way impair the right of my sons or their wives to receive the income of said property or such portions thereof as are bequeathed to them by the foregoing provisions of this codicil."

Wheeler v. Fellowes.

At the close of the codicil the testator re-affirmed and re-published his will, except so far as the codicil altered or modified its provisions.

At the time of the execution of the will and codicil, and on the death of the testator, there were living three sons, and grandchildren of the testator by each of them, the youngest of which grandchildren arrived at the age of eighteen years on the eleventh day of August, 1879.

These are the principal facts of the case, and the first question to be determined is, whether the residue of the property is increased by the codicil above what it was in the will.

We think it remains the same. It is clear by the will that the testator intended an equal distribution of his property among his children and their descendants. He gave to each of his younger sons a building lot in his will, manifestly to make them equal in this respect to his elder son, to whom he had previously deeded a similar lot, and all through the will and codicil this intent clearly appears in all the particular provisions that are made in them. Now if the fee of the two building lots on Whitney Avenue, given in the will to the two younger sons, falls into the residuum of the codicil, equality would not exist, for the eldest son, who had a building lot deeded to him by the testator, would share to the extent of one third in the fee of these two lots in addition to the one he already had. And furthermore, if we should give to the residuary clause of the codicil the full scope of its meaning, it would include the provision made by the testator in his will for the support of his widow, which surely was never intended to be done. And inasmuch as the codicil does not make any particular disposition of the fee of these two lots, we think it continued to remain in the sons, where it was placed by the will, and that the residuary clause in the codicil was intended to include, and does include, only the property embraced in the residuary clause of the will.

The residuary estate ought to have been divided into three equal parts, so far as it could have been done, as soon

after the settlement of the estate of the testator as practicable. This was manifestly the intent of the testator. Each third part of the residuum was left for a different line of owners, and those of the other lines were intended to have no interest in it. Whether it increased or diminished in value, it was of no importance to them, unless the line should become extinct, when it would be the subject of inheritance. Inasmuch as this has not been done, it should be divided into three equal parts so far as practicable, as soon as it can reasonably be done, and each of the parts set to each of the lines respectively.

Another question made in the case is, when shall each of the three equal parts be distributed in fee to the children of each of the sons respectively? The codicil says, when the youngest grandchild of the testator shall arrive at the age of eighteen years. But must such grandchild be the youngest living at the death of the testator, or be the youngest that should at any time be born? We think it must be the youngest living at the death of the testator. The other view would render this part of the codicil obnoxious to the statute against perpetuities, for the residuum is to be divided in fee when the youngest grandchild of the testator shall have arrived at the age of eighteen years; and if the youngest grandchild that should at any time be born is to be the one, it is easy to see that the residue would or might be carried to parties beyond the statute requirement for estates to vest, either in this state or in the state of New York, where some of the real estate lies which is included in the residuum.

Our statute on the subject, so far as it applies to this case, is as follows:—" No estate in fee simple * * * shall be given by * * * will to any persons but such as are, at the time of making such * * * will, in being, or to their immediate issue or descendants." Gen. Statutes, p. 352, sec. 3. The statute of New York on the subject is as follows:—" The absolute power of alienation shall not be suspended, by any limitation or condition whatever, for a longer period than during the continuance of not more than two lives in being at the

creation of the estate." 1 N. York Rev. Statutes, part 2, chap. 1, title 2, art. 2.

The codicil, in substance, is as follows:—"The residue shall be divided in fee among such of my grandchildren as shall be living when my youngest grandchild shall arrive at eighteen years of age. And if any of my grandchildren shall then be dead, leaving children or grandchildren surviving them, such children or grandchildren, as the case may be, shall take the share of their deceased parent or ancestor."

Here the absolute power of alienation is suspended till the youngest grandchild of the testator shall arrive at eighteen years of age, and if the youngest grandchild that should at any time be born shall be the one to be taken, the suspension must continue till after the death of all the children of the testator; for not till then could it be determined who the youngest grandchild would be. Hence such construction would make the distribution clearly void by the statute of New York, for the suspension would continue longer than two lives in being when the estate was created; and such construction would likewise make the distribution void by our statute, for the estate might be carried to parties not in being when the will was made, and not the immediate issue of parties then in being. We think therefore that the youngest grandchild living at the death of the testator must be the one whose age must determine when the distribution of the residue in fee is to be made.

But however this may be, we think the distribution in fee must be declared void, in any view of the case, as being obnoxious to the statute of perpetuities of this state, and also of the state of New York.

It is manifest, that no estate in fee can possibly vest in any parties till the youngest grandchild shall arrive at the age of eighteen years. Till then it could not possibly be known where the estate would go by the terms of the codicil. It must be divided among the grandchildren if living; but they may all be dead, leaving children and possibly grandchildren who will take the estate by representation directly

under the codicil. Hence it is clear that the estate is beyond the reach of alienation or vesting till such time shall arrive.

The power given to the trustees to sell at their discretion is not enough. If they exercise their discretion the will requires that they shall re-invest the proceeds of the sale, which would be merely changing the estate from one form into another. *Hawley* v. *James*, 16 Wend., 62.

Our statute is imperative, that the estate must be given to parties in being when the will was made or to the immediate issue of parties then in being. If by possibility the estate might be carried by the terms of the will to parties not then in being and who are not the immediate issue of parties then in being, the will in this respect is void. *Alfred* v. *Marks*, 49 Conn., 473.

In this case it was uncertain whether the youngest grandchild living at the death of the testator would continue to live till she was eighteen years of age; but in the event of death the codicil might possibly be construed to mean the time when she would have arrived at eighteen years of age if she had continued to live, as the time intended by the testator that distribution in fee should be made; or possibly the youngest who should arrive at eighteen years of age might be held to be the one intended.

But it is easy to see that great changes might have occurred in this family before such time should arrive. During the interval between the making of the codicil and the time for distribution in fee, all the grandchildren of the testator living when the codicil was made might have died, leaving children and grandchildren born after the date of the codicil. Thus three generations might have come into being during the interval, and many of them might have died. There was time enough for all this. Suppose a grandchild had been born immediately before the death of the testator, and another had been born immediately after the codicil was made. Suppose the testator had lived twenty years after the making of the codicil. Here the interval of time between the making of the codicil and the time for distribu-

tion would be thirty-eight years; time sufficient for the grandchild, born after the codicil was made, to grow up and have children and grandchildren, making three generations after the codicil was made; and the grandchildren would take the property by the terms of the codicil at the time distribution should be made if their ancestors had died— two generations after the limitation by our statute. If we suppose a grandchild born immediately after the death of the testator, and one immediately before his death, then eighteen years would elapse before the time for distribution; which would be time sufficient for the grandchild born after the testator's death to grow up and have children, before the time for distribution, who would take the estate by the terms of the codicil, if their ancestors had died—one generation beyond the limitation of our statute. Clearly then the distribution in fee provided for by the codicil is void by our statute.

And it is equally so by the statute of the state of New York. In the case of *Hawley* v. *James*, 16 Wend., 62, the testator, after stating his purpose of confiding the care and management of his estate to trustees, provided as follows:— "This trust shall continue, and the final division of my estate shall not take place until the youngest of my children and grandchildren, living at the date of my will, and attaining the age of twenty-one years, shall have attained that age." He had at that time thirteen children and grandchildren who were minors, the eldest of whom was of the age of eighteen years, and the youngest was a grandchild of the age of eleven months. The other minors were of different ages between one and eighteen years.

The court say :—" The question is not whether the trust probably will, but whether it can, transgress the statute rule. It must be so limited in point of duration that it cannot in any event exceed two lives; otherwise it is void in its creation. There is no way in which we can give effect to the statute but by adhering strictly to the measure of duration which it prescribes. The utmost limit for which alienation may be suspended must be measured by

lives, and there can be only two lives. The lives must be designated. This may be done either by naming two persons in particular, or else by describing a class of persons and bounding the suspense of alienation by the lives of the first two who shall die out of the class. If the two last lives are taken it is obvious that the suspense will continue for as many lives as there are persons in the class. The limitation may be for a shorter period than two lives; it may be for a single life. The estate may also be limited so as to depend on some event other than life; as an estate to A for ten years, if B and C or either of them shall so long live. Here the estate may determine either by the lapse of the ten years, or by the death of B and C, but it can in no event exceed two designated lives. So an estate during the minority, widowhood, or other stage of existence through which two individuals may pass, would be good, because it could not by any possibility extend beyond two designated lives. But life must in some form enter into the limitation. No absolute term, however moderate, or however short, can be maintained; and no uncertain term, the utmost limit of which is not bounded by lives, can be sustained. In short, the statute has said that alienation shall not be suspended beyond two lives *by any limitation or condition whatever*, and any disposition which may work a larger suspense must be utterly void."

In the case of *Smith* v. *Edwards*, 88 N. York, 92, the testator directed that $30,000 should be kept invested until his youngest grandchild then born, or that might thereafter be born before the final distribution of his estate, should be of age. He then directed his executors to make distribution when his youngest grandchild born, and that might within twenty years be born, should arrive at full age, or, if a granddaughter, when she should be lawfully married. The parties to whom distribution was to be made were left uncertain till such time should arrive. The court held the bequest void by their statute of perpetuities. The court say:—" The absolute ownership is suspended in one of two ways; either by the creation of future estates vesting upon

the occurrence of some future and contingent event, or by the creation of a trust, which vests the estate in trustees. In both ways it is argued this will offends. If by its terms a trust estate is in fact created, the result asserted is inevitable; for such trust estate would run for a fixed period of time which might exceed the limit of two lives in being at its creation, and is not bounded by the continuance of lives at all. * * * The condition of survival attached to the gift itself; who the legatees would in fact prove to be depended upon a future contingency. Those who were to take in the prescribed event were uncertain until it happened; they might not be any one of those *in esse* at the testator's death, and might prove to be a grandchild born twenty years later. The ultimate vesting of this portion of the principal of the special fund was, therefore, plainly postponed for twenty years, and not during designated lives in being, and must be declared invalid." See also *Robert* v. *Corning*, 89 N. York, 225; *Purdy* v. *Hayt*, 92 N. York, 446; *Schettler* v. *Smith*, 41 N. York, 334.

Here an express trust was created to continue till distribution in fee should be made, and the codicil in this respect is clearly void by the statute of New York against perpetuities.

The invalidity, however, of the ultimate disposition of the fee intended by the testator, does not impair the effect of the trust created by the codicil, so far as concerns its provisions for the life estates of his sons, and of the widows of Samuel and Frank. Each of the sons upon the testator's death became entitled to one third of the estate in fee, subject to the trust estate created to endure during his life, and in the case of each of the younger sons, during the life of his wife, and subject further to the provision for the testator's widow. We are inclined to the opinion that the codicil revoked the disposition of the fee made in the will in favor of the sons. But, however this may be, they took the same estate, whether it came to them by the will or by inheritance. In either case the codicil incumbered the fee

by the life estates therein, and therefore it is unnecessary to decide this question.

We therefore advise the Superior Court that the residuary estate described in the codicil embraces all the property which the residuum of the will embraced, and no more; and, that the residuary estate, exclusive of what is left in trust for the testator's widow, should be divided by the surviving trustee into three equal parts, and one part set to each of the three different lines of owners.

Possession of Richard's third should be at once delivered to those entitled to it by succession from him. Possession of Samuel's third should be retained by the trustee during the life of Samuel's widow. Possession of Frank's third should be retained by the trustee, or his successor in the trust, during the life of Frank and his wife.

On the decease of the testator's widow a similar division and disposition should be made of the trust property held for her use.

In this opinion the other judges concurred.