Andrews *v.* Rice.

---

WILLIAM H. ANDREWS AND OTHERS *vs.* RICHARD E. RICE, TRUSTEE, AND OTHERS.

A testator whose sole heirs at law were two daughters, gave the greater portion of his estate to trustees, to pay over the entire income to them for their joint lives, and to the survivor half the income for her life, and out of the other half two hundred dollars to each of the children of the deceased daughter, the balance of the income to be added to the principal; and on the death of the surviving daughter the whole property to be divided into as many shares as there should then be grandchildren of the testator, the children of a deceased grandchild to be counted as one and to take the parent's share per capita. Held—

    1. That the gift to the grandchildren was to be regarded as a several bequest to each, and as not vesting in right until the time of the division of the property among them.

    2. That the gift to the children of a deceased grandchild was void, as contravening the statute against perpetuities.

    3. That the invalidity of that bequest invalidated the entire bequest to the grandchildren.

4. That the direction to add the balance of the income to the principal during the life of the surviving daughter was not so connected with the bequest to the grandchildren as to be in itself invalid.

[Argued December 4th, 1885—decided May 3d, 1886.]

ACTION by the plaintiffs, as a part of the heirs at law of William Johnson, deceased, against the trustee under his will and the beneficiaries under the trust, for an adjudication as to the validity of certain provisions of the will; brought to the Superior Court. Facts found and case reserved for advice. The case is fully stated in the opinion.

*S. E. Baldwin*, for the plaintiffs.

1. The bequest to the grandchildren does not vest until the decease of the survivor of his two daughters. *Bristol* v. *Atwater*, 50 Conn., 404, 407; *Brown* v. *Williams*, 5 R. Isl., 309, 317; *Thomson* v. *Ludington*, 104 Mass., 193; *Hall* v. *Hall*, 123 id., 120, 124; *Everitt* v. *Everitt*, 29 N. York, 39; *Colton* v. *Fox*, 67 id., 348, 353; *Warner* v. *Durant*, 76 id., 133, 139; *Purdy* v. *Hoyt*, 92 id., 446, 454; *Hobson* v. *Hale*, 95 id., 588, 614; *Shipman* v. *Rollins*, 98 id., 311; *Colby* v. *Duncan*, 1 Eastern Reporter, 10.

2. The bequests to grandchildren, and especially to the children of deceased grandchildren, are void under our statute against perpetuities. *Allyn* v. *Mather*, 9 Conn., 114, 120, 127, 129, 132; *Rand* v. *Butler*, 48 id., 293, 299; *Alfred* v. *Marks*, 49 id., 476; *Wheeler* v. *Fellowes*, 52 id., 238, 244; *Turley* v. *Turley*, 11 Ohio St., 173; *Leffingwell* v. *Warren*, 2 Black, 603; *McArthur* v. *Scott*, 113 U. S. Reps., 383.

3. They are also void under our common law. *Rand* v. *Butler*, 48 Conn., 299; *Alfred* v. *Marks*, 49 id., 476; *Blagrove* v. *Hancock*, 16 Sim., 371, 376.

4. The invalidity of the provision for descendants who are not the immediate issue of grandchildren living when the testator died, invalidates the entire provision for the disposition of the principal of the fund. *Leake* v. *Robinson*, 2 Meriv., 363, 388; *Greenwood* v. *Roberts*, 15 Beav., 92, 98;

*Seaman* v. *Wood*, 22 id., 591, 595; *Ker* v. *Lord Dungannon*, 1 Dru. & War., 509, 553; *Pearks* v. *Moseley*, L. R., 5 App. Cas., 714, 723, 733; *Fosdick* v. *Fosdick*, 6 Allen, 41, 48; *Sears* v. *Putnam*, 102 Mass., 9; *Amory* v. *Lord*, 5 Seld., 403; *Benedict* v. *Webb*, 98 N. York, 460, 466; *Lapham* v. *Martin*, 33 Ohio St., 99, 103.

*J. T. Platt*, for Mary E. Thayer, the surviving daughter of the testator.

1. It is contended by the plaintiffs that the provisions of the will relating to the disposition of the remainder of the estate, after the life estates of the daughters and of the survivor of them, are void as contravening the rule in regard to perpetuities. This rule and its application have recently been considered by this court in a series of cases of great importance, and we think it unnecessary for us, in view of that fact, to enter very deeply into a discussion of it. Unless it can be shown that the grandchildren took a vested interest from the decease of the testator, it is not perceived how, in view of the repeated rulings of this court, the ultimate disposition of the residue and remainder sought to be effected by the testator can be sustained. We agree with the plaintiffs' counsel in his contention that the testator intended that the shares should vest in the respective beneficiaries upon the decease of the surviving daughter. That this is the legal construction to be placed upon the language used, taken in connection with the several provisions relating to the ultimate disposition of the estate, also seems to us clear. At first sight there seems to be a resemblance between the case at bar and that of *Farnam* v. *Farnam*, just decided, but a closer study reveals the fact that there are wide differences. These differences are so essential that this case cannot be brought under the principle of *Farnam* v. *Farnam* without indulging in a latitude of exposition that would infringe old and well settled rules of law.

2. So far as the argument contained in the first three points of the brief filed by the plaintiffs' counsel is con-

cerned, we are at one with him. When we come to the
question, what effect have the void provisions on the rest of
the will, which he discusses under his fourth point, we are
obliged to part company. If the provision of the testator's
will for the ultimate disposition of the principal of his
estate is invalid and falls, we concede that it is for the in-
terest of the plaintiffs that the life estate of the surviving
daughter, as provided for in the second and fourth para-
graphs, should fall with it. That the testator had the ca-
pacity to create this life estate, and that he has done so,
cannot be denied. It also seems to us clear that there is
no necessary connection between this part of the will and
the part supposed to be invalid, and that there is no legal
reason why the life estate should not be sustained, as was
done in the case of *Wheeler* v. *Fellowes*, 52 Conn., 238.

CARPENTER, J. William Johnson made his will in 1863.
He died in 1874. In his will he gave the greater portion of
his estate to trustees in fee simple, who were directed to pay
over the income, after paying a certain annuity, in equal
portions to his two daughters during their joint lives; and
on the death of either to pay over one half the income to
the other during life, and from the other half to pay to each
of the children of the deceased daughter the sum of $200
annually, the balance to be added to the principal. The
fifth article of the trust clause of the will is as follows :—

"At the decease of my said surviving daughter said trus-
tees shall divide the principal of said trust estate into as
many equal shares as I may have grandchildren or their
issue then living, the issue of any deceased grandchildren
to be counted as one share; and I give and devise one of
said equal shares to each of my said grandchildren in fee
simple, and one of said shares to the said issue of each de-
ceased grandchild who has left issue then surviving in fee
simple, to be equally divided; and said trustees shall con-
vey and pay over to each of said devisees one half of their
said share when he or she becomes twenty-one years of age,
and the other half when he or she becomes thirty years
of age."

If the gifts to the grandchildren and their issue do not vest until after the death of the surviving daughter, it is conceded that they are void by force of the statute against perpetuities. This is so because it was possible for grandchildren to be born after the death of the testator, and to die before the death of the surviving daughter leaving issue. So that the question is—whether these gifts vest, in point of right, in the grandchildren at the death of the testator, or when the property is divided into shares after the death of the surviving daughter.

We are constrained to say that they are contingent, and therefore do not vest during the lifetime of the daughters or either of them. There is no present gift to the grandchildren as a class, nor is there any gift to them jointly or as tenants in common; there is in fact no gift until there is a division of the property into shares, and there can be no division until the death of the surviving daughter. Until then the number of shares cannot be known. Upon the division there is a gift of one share to each grandchild and to the issue of each grandchild. There is not one gift of the whole property to all the legatees to be subsequently distributed, but there is first a division and then a gift of one share to each. Each grandchild takes his or her share in severalty, and the children of each deceased grandchild take one share as tenants in common. Until the division of the property therefore no one has any vested interest in any part of the property. His interest is contingent; if he dies without issue it is extinguished; if he leaves issue they take, not as his heirs, but as purchasers under the will.

From these considerations the logical conclusion is that prior to the division the grandchildren took a contingent and not a vested interest. Such was the manifest intention of the testator.

There is another provision in the will which is inconsistent with a vested interest; and that is the gift over to the charitable societies in case both daughters should die leaving no children or issue surviving them. The gift to each of the grandchildren is in express terms a fee simple. The

testator clearly intended that whenever it did vest it should
be an absolute, unqualified estate. If it vested on the death
of the testator then there was nothing on which the sixth
article of the will (to charitable purposes) could operate.
The only escape from this conclusion is, that he intended to
give the grandchild an interest vesting in right at his death,
defeasible upon issue becoming extinct during the lifetime
of his surviving daughter. For what purpose he should
desire to give such a naked, unproductive right, or of what
benefit it could be to the grandchild, it is impossible to con-
ceive. We fail to discover any indication of such an inten-
tion. The better view is, that he intended that either the
grandchildren or the charitable societies, as the case might
be, should take after the death of the surviving daughter.
One or the other must take, and not both successively.

These two features of this will distinguish this case from
that of *Farnam* v. *Farnam*, 53 Conn., 261.

Our next inquiry is—how are these trusts, provided for
in the will, affected by declaring the final disposition of the
trust fund void? In answering that question we must as-
certain the intention of the testator as to the object of those
trusts, and whether that object is so independent of, and
severable from, the illegal object, that it can be carried into
effect with due regard to the legal rights of all the parties
interested, without annulling any of the legal provisions of
the will, and without adding thereto. If the leading and
primary object was to accumulate a fund for illegal distri-
bution; or if the trusts were strictly subservient or auxiliary
to such a distribution so as to be themselves tainted with
the illegality; or if they are so connected therewith that
they cannot be separated and carried into effect without
involving consequences substantially and materially differ-
ent from what the testator intended, then they too must fall
with the illegal distribution.

The will gives the residue of the testator's property to
three trustees " as joint tenants in fee simple, in trust how-
ever and confidence for the following enumerated uses and
purposes, namely ":—

The first clause relating to the trust simply directs as to the management of the trust estate, and does not affect the question at issue.

"Second. Said trustees shall pay over to my said daughters, for their use, each one half of the net income and interest of said residue of my estate from time to time as the same shall accrue and be collected, deducting therefrom any amount I may in this instrument give and bequeath for other purposes."

The third clause directs the trustees to pay an annuity of $600 to the sister of his late wife, and then continues as follows :—" And all the remainder of the net income of my estate the said executors or trustees shall pay over as it accrues to my two daughters, the said Julia Russell Andrews and the said Mary Elizabeth Thayer, to be equally divided between them, and to be for their sole and separate use respectively, and free from and independent of the control of any present or future husband of either ; and the receipt of each of my said daughters shall discharge said trustees from any payment to her as fully as if she were unmarried.

" Fourth. At the decease of either of my said daughters said trustees shall pay to each of her children, if she leaves any surviving her, $200 yearly for their education and support, not exceeding however in all the half of said remainder of said net income, during the life of my surviving daughter, and the other half of said remainder of said net income shall continue to be paid to my said surviving daughter during her life ; any surplus income not paid over shall become part of the principal."

The fifth clause, after providing for a division of the trust estate into shares at the death of the surviving daughter, and giving one share to each grandchild, and one share to the issue of each deceased grandchild, to be paid one half on arriving at twenty-one years of age, and the other half on arriving at thirty years of age, proceeds as follows :—
" And until so paid said trustees shall manage each share with the same powers hereinbefore given them, and shall pay over the income of each share from time to time to its

Andrews v. Rice.

respective devisee, or for his or her support and benefit, as said trustees may judge best; provided however that the share of each grandchild and of their said issue shall be subject to the payment of the before mentioned annuity, &c."

Thus it will be seen that there are successive trusts; the first embraces the whole estate, and is for the benefit of the daughters during life; the second consists of several distinct independent trusts, each embracing one share only of the whole estate, and each being for the benefit of one grandchild or the issue of a deceased grandchild.

The trust for the daughters, and the several trusts for the grandchildren, evidently stand in different relations to the final disposition of the property and must be considered separately. The first is clearly severable from the illegal bequests. In creating it, manifestly, it was not the leading thought of the testator to accumulate a fund for the grandchildren. One object seems to have been to preserve the principal for them; but at the same time it seems to have been at least of equal importance in his mind to provide for his daughters during life. Consequently, as long as they both live the whole income is given to them. Had both lived to old age, as was possible apparently, and perhaps probable, when the will was made, and one had not long survived the other, the accumulation, if any, would have been slight. In view of such a possibility we cannot say that he intended or contemplated a substantial accumulation. In ascertaining the intention when the will was made regard must be had to the state of things as it then existed. The early death of one of the daughters was not anticipated, and of course was not specially provided for. It was an incidental circumstance that can have no proper bearing upon the construction of the will.

The fact that the testator provided that the income received by the daughters should be and remain their separate estate is of some significance in this connection. That was a legitimate purpose, and was in no wise connected with the illegal bequests. It was also a prominent feature of the trust. If now the trust is declared void then Mrs. Thayer

receives her portion of the income as heir at law, and the separate character impressed upon it by the testator will be destroyed. Thus his intention to that extent will be defeated. We see no good reason why that should be done.

It was urged upon our consideration that the death of Mrs. Andrews during the lifetime of the testator results not only in an unequal disposition of the income during the life of the surviving daughter, but also increases the fund to be ultimately divided; and as that fund is now to be divided *per stirpes* instead of *per capita* as the will provides, the inequality contemplated by the will will be somewhat increased by giving the children of Mrs. Andrews one half of the property instead of three fifths. We have duly considered this circumstance and think that it ought not to invalidate the trust. So far as the income is concerned, the will as it stands, even if all valid, contemplates an inequality; consequently the testator intended it; especially is this so as Mrs. Andrews died in 1866, and the testator made three codicils after her death, making no change in the original will in this respect. That inequality does not seem to be affected at all by holding the bequests to the grandchildren and their issue void.

The final disposition of the principal fund will be, as suggested, somewhat different under the statute of distribution from the disposition contemplated by the will. We suppose that it always happens that when a will or part of a will is set aside and the property becomes intestate, the law disposes of it in a different manner. The law however produces no inequality; on the contrary its aim is equality,—not among the grandchildren *per capita*, but among the children. The execution of the trust involves an inequality in the disposition of the income. A portion of it, which Mrs. Andrews would have received had she lived, is carried to the principal, and the children of Mrs. Thayer as well as the children of Mrs. Andrews participate in it. One provision in the will partially remedies this inequality by giving Mrs. Andrews's three children three fifths of the estate and the two children of Mrs. Thayer two fifths of it. One

Andrews v. Rice.

statute makes that provision void; another statute divides the fund into two equal parts, one of which goes to the children of Mrs. Andrews and the other to the children of Mrs. Thayer. We do not find in this legal result a sufficient reason for declaring the trust void.

It is to be noticed that the incidental, and probably in the expectation of the testator very inconsiderable, accumulation of the property during the life of the surviving daughter, is only what the law itself would have required and effected in the absence of any direction in the will. If the testator had simply given one half the income to the surviving daughter for her life, and $600 out of the other half to the three children of the deceased daughter, and had given no direction as to what should be done with the balance of the income, the trustees would necessarily add it to the principal. The law would keep no separate account of it. It is simply so much property, and as the whole property is held by trustees, it becomes a part of the trust fund and so far increases it. The direction in the will that this balance of income should be added to the principal cannot therefore be regarded as in contravention of the law. Nor can it borrow any infirmity from the invalidity of the second trust, as it cannot be regarded as an integral part of that scheme, and brought into being only on account of it, but as connected with it only in the most incidental manner. The testator has done with the balance of income only what he would have done if he had contemplated any other, even the most legal distribution of the final fund.

It is obvious that the balance of income could not be distributed from time to time to the heirs at law, (supposing the testator had given no direction to add it to the principal,) because the surviving daughter is to have half the income of all the property, and this becomes at once a part of the property. If therefore there had been no second trust, and no express direction as to adding the balance of income to the principal, the bequest to the surviving daughter is such as, by clear implication, to make the adding the balance of income necessary. It is clearly therefore no essen-

tial part of the scheme of the second trust. It has a " reason for being " entirely of its own.

Whatever inequality may exist is the result of the law and the testator's clearly expressed intention, and is in no wise produced by holding the gifts to the grandchildren void.

We may add generally that the illegal bequest is not dependent on the trust; and the trust is not necessarily, nor in any legal sense, auxiliary to the bequest; and we are unable to see that avoiding the bequest produces any result in the administration of the trust not contemplated by the testator.

But it is not so with the trusts in favor of the grandchildren. The division of the property which lies at the foundation of those trusts is essential to and a part of the illegal bequest. Moreover those trusts are mere incidents growing out of the illegal bequest; more than that, they are a part of it, and must fall with it.

The Superior Court is advised to adjudge the bequest to the grandchildren and their issue and the trusts in their favor void, and the trusts in favor of the daughters valid.

In this opinion the other judges concurred.