## JONATHAN F. MORRIS ET AL., EXECUTORS, *vs.* WILLIAM W. BOLLES ET AL.

First Judicial District, Hartford, May Term, 1894.  ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

After making certain specific bequests a testator, by the seventh clause of his will, gave the residue of his estate to trustees, from the income of which they were first directed to pay certain annuities, and of the remaining income one half was to be paid in equal parts to his five children who were named in the will; the remaining one half of the income and the accumulations thereon he directed the trustees to hold and invest until the death of the testator's last surviving child, when, by the eleventh clause of the will, the entire estate then existing was to be equally divided among his "grandchildren and their heirs."   The eighth clause of the codicil provided that all the bequests and legacies made in the will not specially limited or directed, nor changed by the

codicil, and also those made in the codicil, should be paid to the "legal heirs" of such of the beneficiaries of the will and codicil "as shall have deceased during" the testator's lifetime. Of the five children living at the execution of the will in 1883, one son, *S*, died in 1884 and before the execution of the codicil, leaving a widow and two children who still survive; while another son, *J*, died in 1894 and several years after the testator, leaving a widow and two minor children who are still living; the other three children of the testator are living, are married, and each has issue. In a suit brought by the executors and trustees to determine the construction and validity of the will it was *held :—*

1. That the gift of income to the children of the testator, under the seventh clause of the will, was not a gift to them as a class with the right of survivorship, but a gift to each child individually of an equitable interest in one tenth of the net income from the residue of the estate, to continue until the death of the last surviving child.
2. That by virtue of the eighth clause of the codicil the children of *S* were entitled, as "legal heirs," to receive one fifth of one half of the income of the residuary estate mentioned in the seventh clause of the will; but that the widow of *S* was not included by the words "legal heirs," as there used.
3. That *J*, upon the testator's death, had a vested right to receive his share of the income during the trust period, to wit, until the death of the last surviving child of the testator; and that this right passed to his administrator as assets of his estate.
4. That the provision in the eleventh clause of the will, directing an equal division of the estate existing at the death of the last surviving child "among my grandchildren and their heirs," was void as contravening the statute against perpetuities, General Statutes, § 2952; but that such invalidity did not affect the trust, which was valid, and would continue until the death of the last surviving child.
5. That the fee of the residue of the estate, subject to the trust, vested in the heirs at law of the testator at the time of his decease, as intestate estate.

[Argued May 15th—decided September 1st, 1894.]

Suit to determine the validity and construction of the will of William Bolles, late of Hartford, deceased ; brought to the Superior Court in Hartford County and reserved by that court, *Shumway J.*, upon the facts stated in the complaint for the advice of this court.

The case is sufficiently stated in the opinion.

*Charles E. Gross*, for the executors and trustees, and certain of the grandchildren.

*Henry C. Robinson* and *E. Henry Hyde, Jr.*, for Margaret B. Quiggle and George A. Bolles, George A. Bolles administrator, and Minnie S. Bolles, widow of John F. Bolles, deceased.

*Arthur L. Shipman*, for George P. Bolles and William H. Bolles, children of Samuel P. Bolles, deceased.

FENN, J. This is a complaint brought by the executors and trustees under the will of William Bolles, late of Hartford, deceased, claiming a construction of said will, and advice as to their duties.

The Superior Court, by consent of the parties, found all the allegations of the complaint true, and reserved the questions arising upon the record for the consideration and advice of this court.

The testator died in 1889, leaving an estate inventoried at upward of one million dollars. The will in question was executed in 1883, and a codicil thereto was executed in 1884. The testator was 81 years of age at the time of his decease. He had been four times married. William W. Bolles, one of the defendants, is the child of the second wife. All the other children named in the will or complaint are the children of the third wife. He married his fourth wife after the execution of the will, but before the execution of the codicil, which reaffirmed the will. By his last wife he had no children. He had entered into an ante-nuptial contract with her whereby she acquired by the marriage no interest in his estate. At the date of the execution of the will the testator had five living children, namely: four sons, William W., Samuel P., George A., and John F. Bolles, and one daughter, Margaret B. Quiggle. Samuel P. died in 1884, before the execution of the codicil, leaving a widow still living and not remarried, and two sons, still living, born respectively in 1881 and 1883. John F. died since the testator, leaving a widow and two minor children. The other children of the testator are living, married, and each has issue.

So much of the will and codicil as are here material may be stated and summarized as follows: The testator in his

will, after direction for the payment of debts and charges, makes certain direct bequests to children (except Samuel P. to whom nothing was given directly) and to a nephew; then to trustees, the plaintiffs, he gives certain specified sums to be held in trust for his children, respectively; providing "if any of my children named in the above-mentioned trust shall die, not having received the sum, or any part of the sum, held in trust for him, or her, or them, and not leaving any lawful heirs of body, then the amount or sum shall go back into my estate; but if in such case there shall be any lawful heirs of body, then the said sum or sums shall be held by my trustees in trust for said heir or heirs, and my trustee shall pay over the sum to such heir or heirs when they shall arrive at the age of twenty-one years, if they shall deem it best to do so." By the sixth clause of the will the entire rest and residue of the estate is given to the trustees named, as a fund to be held and managed by them for the purposes of paying from the income of the fund certain named sums or annuities; one to his son, Samuel P. Bolles, of twelve hundred and fifty dollars annually during his life; and three others, one to the mother of his late wife, and two to nieces, each of two hundred dollars annually. The first paragraph of the next clause is as follows :—

"*Seventh.* After the payment of all expenses, charges, taxes, etc., and annuities, and all sums heretofore expressed, my will is, that one half of the income of my estate shall be paid in equal parts to my children here named, to William W. Bolles, Samuel P. Bolles, George A. Bolles, Margaret L. Bolles, and John F. Bolles; but the said Margaret is to receive her share of said income free from the control of her husband, if she shall marry. The remainder of the income of my estate, and the accumulations thereon, I desire my trustees to hold and invest in the manner hereafter expressed." The testator then in the remainder of this, and in succeeding clauses, gives instructions as to investments, management and other matters, not here essential to note, and then in the eleventh clause says : " My will is that the trusts created in this will shall exist and last until the death

of my last surviving child, then it shall cease, and my estate then existing shall be divided equally among my grandchildren and their heirs."

In the eighth clause of the codicil it is provided that, " all the bequests and legacies made in my will not specially limited or directed, nor changed by this codicil, and also those made in this codicil, shall be paid to the legal heirs of such of the beneficiaries of said will and this codicil as shall have deceased during my life time."

The complaint alleged that by reason of the death of John F. Bolles, the following questions have arisen, concerning which adjudication is asked, with direction to the plaintiffs in what manner they shall execute their trust:—

" 1. Are the children of said Samuel P. Bolles, to wit, George P. Bolles, and William H. Bolles, entitled to receive any portion of the one half of the income of said estate mentioned in, and under the provisions of, the seventh clause of said original will ?

" 2. Upon the death of the testator, did the said John F. Bolles take a vested right to receive a share of said one half of the income of said estate during the entire trust period created by said will, to wit, until the death of the last surviving child of said testator? And if so, from and after his death, was and is it the duty of the plaintiffs to pay said share of said one half of said income to George A. Bolles as administrator of the estate of said John F. Bolles ? Or shall the plaintiffs distribute said share of said one half of said income to and among the widow and heirs of said John F. Bolles, deceased?

" 3. From and after the death of the said John F. Bolles, did his share of said one half of said income of the estate become a part of the remainder of the income of said estate, to be held and invested by the trustees with the other half of said income ?

" 5. From and after the death of the testator's son, John F. Bolles, what was, is, and will be the duty of said plaintiffs as trustees as to that part of the one half of the income of said trust estate which, by the provisions of the seventh

clause of the original will, the trustees were directed to pay to said John F. Bolles?

" 6. Is the gift over to the grandchildren and their heirs, upon the death of the last surviving child of the testator void as contravening the provisions of the statute against perpetuities? And if it is void, what are the respective rights and interests of the defendants hereto in said estate, and what are the duties of the plaintiffs as executors and trustees in respect to holding, dividing and distributing said estate, both principal and income?

" 7. Upon the death of the last surviving child of the testator, will the estate then existing be intestate estate of the testator, or is it so to-day?"

We think that by the language used in the seventh clause of the will, it is reasonably clear the testator intended to give to each of his five children, named therein, an equitable estate or interest in one tenth of the net income of his residuary estate, remaining after the payment, from the entire estate or from the gross income of "all expenses, charges, taxes, etc., and annuities, and all sums heretofore expressed;" that he intended such interest or estate in such share of the net income, given to each of his children, to continue during the existence of the trust, that is, until the death of the last survivor of such children. It was therefore, in effect a gift to each of his children, for a period which might, and in fact in the case of four out of five of such children would, outlast their lives. In such event, the share of income for the remainder of the period of any child dying before the last survivor, would be assets of the estate, testate or intestate, of such child. If this be the intention there is manifestly nothing in it in any wise contrary to rules of law, or considerations of public policy. That such was the purpose of the testator several things unite to prove. In the first place, the testator made no provision whatever concerning the disposition of the share of income of any child, after the death of such child, during the continuance of such trust—the event sure to happen in the case of four out of five of such children. In this respect the case is differentiated from that

of *Ketchum* v. *Corse et al.*, 65 Conn., 85, which has since come before us for consideration, where such events were specially provided for by the testator. It is not to be supposed that such failure to provide could be due to oversight. It is rather to be inferred that the testator believed that full provision for such contingencies had been made. This supposition is strengthened by the fact that in making his codicil, Samuel having then died, he directed in the eighth clause of that instrument that all bequests and legacies made in his will, not specifically limited or directed, and also those made in the codicil, should be paid to the legal heirs of such of the beneficiaries as should have deceased during his lifetime. We think, in making this provision, he had in mind, among other things, the seventh clause of the will, and limited the expression to children dying in his lifetime, because he believed the clause in question would effectuate a similar, though as we shall see later, not identically the same, disposition in case of those dying during the continuance of the trust and after his own decease.

It is the claim in behalf of the surviving children, however, that this gift of income to the children is to those living at the death of the testator, as a class, and belongs to the survivors of such class. If this be true, then in that way it would also be true that the testator has made full provision for the contingency of the death of each child dying during the continuance of the trust. It would also be true that the gift of income beneficial to Samuel P. Bolles, who died in the lifetime of the testator, goes to the survivors; for in that case the gift could not be saved for his estate by the eighth clause of the codicil, or by the provisions of General Statutes, § 541. If the gift to Samuel P. Bolles was to him as one of a class to which was attached the incident of survivorship, then neither the statute could give the issue what the parent was not intended to take, nor could the testator fairly be presumed by the language of the codicil to so change the meaning of his will, as originally expressed in the said seventh clause. But we are convinced that the testator did not intend this gift of income to be to his children as a class.

It is urged in favor of the claim, that they are described as children, and that the succeeding recital of their names is simply a description of the several members of the class. It is said that in other portions of the will and codicil the gifts to the children are separate, and that where they are gifts of inheritance, the testator plainly indicates it; that it is a familiar rule that "*prima facie* joint legatees take as a class," citing *Bolles* v. *Smith*, 39 Conn., 217, 218. In the case cited the language of this court was : " It is a general rule of construction that where a legacy is given to two or more persons, *nominatim*, to be equally divided among them, and one of them dies before the testator, his share will become intestate; but where the legacy is to two or more as a class, the share of a deceased legatee goes to the survivor or survivors. *Prima facie* joint legatees take as a class; otherwise where the legacy is given to them as tenants in common. All these rules however yield to the manifest intention of the testator, as gathered from the whole will, viewed in the light of the surrounding circumstances." It was further said in that case, the legatees being described as sons of a late brother, and the record showing they were all of his sons: " If there was nothing else in the case it would be clear that they would take as a class. But the will names all the sons, and provides that they shall take equally. That, alone, indicates an intention that they should take as tenants in common. Thus far the language used by the testator gives no certain indication of his will in this respect. We must therefore look further for his intention." In the quite recent case of *Bill* v. *Payne*, 62 Conn., 142, 143, *Bolles* v. *Smith* is cited, the same judge (CARPENTER) writing the opinion, and it is said : " The law prefers a tenancy in common to a joint tenancy. Even a joint tenancy does not of its own force always carry with it a right of survivorship." And it was further said, referring to the testatrix : " She simply named the legatees, indicating in a general way the relation which each sustained to herself, and provided that her property should be equally divided among them. Thus each one took indi-

vidually and not as a member of a class, as a tenant in common and not as a joint tenant."

In the case before us, the intention of the testator is not alone—as in the cases cited, and nearly all others on this point in the books—to be considered as applying to such a contingency as that which happened when Samuel P. died in his lifetime, and the inquiry is not confined to the question whether in such an event it was the intention that the part which would have belonged to Samuel, in case of his survival, should survive to the other children, or should become the intestate estate of the testator; but the additional question arises as to his intentions in case of the death of children dying after his own decease, and after an ordinary estate not continued by the existence of a trust, would have not only vested in legal right, but have been distributed and apparted. In such a case where the direction of the testator is, as here, that the portion of the income which the persons named as beneficiaries are to receive, shall be paid to them from time to time not in one entire undivided sum or payment for the whole, but "paid in equal parts," and not to children generally, but "to my children here named," there can we think be no doubt that reason and precedent concur in the conclusion that, in the language just quoted from the opinion in *Bill* v. *Payne*, each child should take "individually and not as a member of a class, as a tenant in common and not as a joint tenant."

Such being our view upon this point, namely, that the testator did not intend to make a class; that he did intend this gift to each of his children of a share of income, to continue during the life of the trust, thereby outlasting the lives of all such children except the last survivor, is further evidenced by the whole scheme of the will, from which it seems apparent that it was the controlling purpose of the testator to treat with substantial equality all those standing in the same relation to him, whether as children or grandchildren; and it is also apparent, both from the whole will and from the codicil, that the thoughtful care of the testator extended

to the families of those of his children who should die before the termination of the trusts created by his will.

We will next consider the construction and validity of the eleventh clause of the will, namely : " My will is that the trusts created in this will shall exist and last until the death of my last surviving child, then it shall cease, and my estate then existing shall be divided equally among my grandchildren and their heirs." Under this language, the first question which arises is as to the validity of this provision for final disposition or division among " my grandchildren and their heirs." In support of its validity two claims were made : *first* that by the word " heirs " was intended the heirs of such of the grandchildren of the testator as died in his own lifetime ; *second* " that the gift is to the grandchildren of the testator as a class, both those living at his death, and those since born or who may be born hereafter ; " that it is " a present gift, speaking from the death of the testator, and then vesting in the class which opens to receive after-born grandchildren." Concerning the first of these claims, there is nothing in the whole structure of the will to warrant any such inference as to the intention of the testator ; and assuming that the words " their heirs " meant the heirs of deceased grandchildren, it would do violence to common sense to suppose that in making provision for the equal division of then existing estate, at a time so remote from his own death as the death of the last surviving of his five children presumably would be—a time when all possible grandchildren would have been born, or in being in the contemplation of law, and when it was natural to suppose some of them would have deceased—he should have intentionally provided that the heirs of those, if any, who died in his own lifetime should take, and the heirs of those who survived him, but died during the continuance of the trust, should not take. The familiar rule invoked to determine whether a gift is of a fee or of a less estate in many cases in this State, among others : *Phelps* v. *Robbin,* 40 Conn., 250 ; *White* v. *White,* 52 id., 518 ; *Phelps* v. *Phelps,* 55 id., 359 ; *Johnes* v. *Beers,* 57 id., 295 ; and *Coe* v. *James,* 54 id., 511, that where a bequest is made to one

and in case of his death to his heirs, or in case of his dying without issue, to another, in the absence of anything else in the will which is decisive, the testator is to be understood as meaning in case of such death in his own lifetime, thus defining who should then take by substitution, has, we think, no controlling or useful application to a case and question like the present.

Coming then to the claim that this gift is to the grandchildren of the testator as a class, it is further necessary, in order to enable the claim to benefit those in whose behalf it is made, that it should either be held that the remainder vested in such class at the death of the testator, or that vesting at the death of the last surviving child, it then vested only in the grandchildren then living; and that in either case there was no attempt by the testator to carry the estate, or undefined and uncertain portions of it, to the heirs of a deceased grandchild dying after the death of the testator. This is so because such a gift to such heirs, as purchasers, would offend the statute of perpetuities ; and since the gift to grandchildren would be inseparable from the offensive gift to heirs, and thus " coupled with an illegal bequest," the whole would fall together. *Andrews* v. *Rice*, 53 Conn., 566.   This is not denied.   But it is asserted that the words used, " my grandchildren and their heirs," should not be construed as meaning the same as " my grandchildren and the heirs of any deceased grandchildren ; " that this is not the true interpretation and equivalent of the language actually used, but that by this expression the testator—a layman, using, it is claimed, his own language, or that of some other layman unskilled in the employment of technical terms —" simply used, as he understood, the ordinary language for the conveyance of real estate, or for the vesting of an absolute estate, by will ; " that is to say using the word " heirs " to denote an estate of inheritance, or absolute estate, as a word of limitation and not of purchase.

But it seems to us that there are difficulties in the way of such construction, and that these difficulties are not overcome by the further consideration urged, that the other construc-

tion, as meaning "heirs of deceased grandchildren" would lead to uncertainty as to whether the testator meant such heirs to take by a *per capita* or *per stirpes* distribution; and that the former would, as it is asserted, be absurd, while the latter would be against the testator's express direction for an equal division. It is unnecessary to discuss this, for even if it were conceded the fact would remain that the construction claimed would be a forced one, and do violence to the language used. Whatever inapt technical expressions a layman might employ, it is hardly conceivable that any man of ordinary intelligence and business experience and capacity would order an equal distribution *among* his grandchildren *and* their heirs, when he intended to say that *only* his grandchildren should take. Nor is it probable the testator intended that at the presumably remote period when the trust should cease, children of then deceased grandchildren should take nothing, either derivatively or otherwise, as would be the case if his meaning was as claimed and the remainder estate did not vest in interest until the termination of the trust. On the other hand, that it cannot be held sooner to vest, needs no argument, since it must be so decided in conformity to previous decisions in this State, and for the reasons and upon the considerations therein fully stated. *Wheeler* v. *Fellowes*, 52 Conn., 238; *Andrews* v. *Rice, supra; Landers* v. *Dell*, 61 Conn., 189. It seems to us therefore that this claim cannot be sustained and that in accordance with a long line of decisions in this State, the residuary devise and bequest in the eleventh clause of the will is void, and the residuum is intestate estate. *Jocelyn* v. *Nott*, 44 Conn., 55; *Rand* v. *Butler*, 48 id., 293; *Alfred* v. *Marks*, 49 id., 473; *Wheeler* v. *Fellowes, supra; Bristol* v. *Bristol*, 53 id., 242; *Farnam* v. *Farnam*, 53 id., 261; *Andrews* v. *Rice, supra; Leake* v. *Watson*, 60 id., 498; *Beers* v. *Narramore*, 61 id., 13; *Landers* v. *Dell, supra; Belfield* v. *Booth*, 63 id., 299.

What effect then does this invalidity of the provision in the eleventh clause have upon the preceding provision in the same clause in reference to the trust, that it shall exist and last until the death of the last surviving child? It ap

pears to us that this provision may stand and be effectual. *Andrews* v. *Rice*, *supra*; *Beers* v. *Narramore*, *supra*; *Landers* v. *Dell*, *supra*. The rule to be applied is stated in *Andrews* v. *Rice*, p. 571 : " How are these trusts, provided for in the will, affected by declaring the final disposition of the trust fund void? In answering that question we must ascertain the intention of the testator as to the object of those trusts, and whether that object is so independent of, and severable from, the illegal object, that it can be carried into effect with due regard to the legal rights of all the parties interested, without annulling any of the legal provisions of the will, and without adding thereto. If the leading and primary object was to accumulate a fund for illegal distribution; or if the trusts were strictly subservient or auxiliary to such a distribution so as to be themselves tainted with the illegality; or if they are so connected therewith that they cannot be separated and carried into effect without involving consequences substantially and materially different from what the testator intended, then they too must fall with the illegal distribution."

Relying upon this statement, and upon the further principle laid down in *Bristol* v. *Bristol*, *supra*, 257, that a trust for several purposes, some valid and some invalid " will be supported so far as it is good, provided such part is separable from the rest," it is the claim in behalf of the children of the testator that this trust is severable ; that the gift of the income to the children, and of the fund to produce the income, is good; that the trust for accumulation is for an improper purpose and is void. We think, however, that it would be difficult to thus sever the trust; that the whole must stand or fall together. And we think it may stand. The purposes of such trust are clearly threefold, not twofold merely. There is first the payment of certain annuities. These may continue as long as the contemplated life of the trust. And they may, at least by possibility, exhaust at some time the entire net income of the fund. There is then the payment of income to the children, conceded, indeed claimed, to be valid. There is, finally, the provision for the accumulation of " the re-

mainder of the income of my estate, and the accumulations thereon." It is true that the testator directed this accumulation to be added to and form a part of his residuary estate, and that the provision made for the final division of such estate must, under our decisions be held void. But we do not think it can be said that such accumulation for " illegal distribution " was " the leading and primary object." On the contrary, it seems to us much more probable that this entire scheme was one devised by the testator for the controlling purpose of giving to his children such provision out of his large estate as seemed to him would be ample for their wants, fully enough for their best interests and happiness, and most likely to be of lasting benefit to them and their families ; that therefore the testator's desire that a portion of the income of this residuary estate should be accumulated for a period of time, in itself not illegal, is fairly to be considered so far independent of the ultimate disposition provided for, that it may be presumed the testator intended it for the benefit of the beneficiaries receiving annuities and of the children receiving income. We therefore say, in the language of *Andrews* v. *Rice, supra,* 576, that " the illegal bequest is not dependent on the trust ; and the trust is not necessarily, nor in any legal sense, auxiliary to the bequest ; and we are unable to see that avoiding the bequest produces any result in the administration of the trust not comtemplated by the testator."

In using the language contained in the eighth clause of the codicil, we think, as we have already had occasion to say, the testator, among other things, had in mind the provisions of the seventh clause of his will, and that he intended that the " legal heirs " of Samuel, who had then deceased, should share or take to the extent of what would have been the share of Samuel in half the income of the trust fund. But we further think that by the term " legal heirs," as here used, the testator did not intend to include the widow of his son Samuel, or any other of his sons, or the husband of his daughter, in case any other of such sons, or said daughter, should decease in his lifetime, but only the children. That

he intended to include the "legal heirs" of Samuel is evidenced by other provisions of the codicil, among them the fifth clause, in which the same provision was made for such children, both as to the gift of a sum in trust and of an annuity, as the will had made for Samuel. Then the testator added a direction as to what disposition should be made in a certain contingency of "all the portions of my estate to which they would have been entitled under my will and this codicil," language inapt, unless such construction holds; for if it does not, nothing remains in the original will entitling the children of Samuel to anything thereunder. Further than this, any other construction of the language of the codicil would be opposed to the manifest purpose of the testator to treat all his grandchildren, as well as children, with substantial equality; since, if the provision for the final division of his residuary estate had been valid, as beyond question the testator believed it to be, such grandchildren would receive no portion of it, and would not now receive any part of the income during the continuance of the trust estate. That the testator did not, however, intend to include in the expression "legal heirs" as here used, the widow of Samuel, is shown by the fact that in said codicil it is directed that an annuity of five hundred dollars should be paid to her yearly as long as she should remain a widow.

As a result of these conclusions, it is our opinion, and the Superior Court is advised:—

1. That by virtue of the eighth clause of the codicil, the children of Samuel P. Bolles, to wit, George P. Bolles and William H. Bolles are entitled to receive one fifth of one half of the income of the residuary estate mentioned in and under the provisions of the seventh clause of the original will.

2. Upon the death of the testator, the said John F. Bolles took a vested right to receive a share of said estate, during the entire trust period created by said will, to wit, until the death of the last surviving child of said testator. That being so, it is the duty of the plaintiffs to pay said share of said one half of said income to George A. Bolles, as admin

istrator of the estate of said John F. Bolles, and to his successors in office during the continuance of said trust.

3. The gift over to the " grandchildren and their heirs," upon the death of the " last surviving child " of the testator, is void, as contravening the provisions of the statute against perpetuities. But such invalidity does not affect the preceding trust, which is valid, and will continue until the death of such last surviving child. Subject to such trust, the fee is vested in the heirs at law of the testator, at the time of his decease, as intestate estate.

In this opinion the other judges concurred.