WILLIAM M. RITCH, EXECUTOR, *vs.* JOHN TALBOT ET AL.

Third Judicial District, New Haven, June Term, 1901.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A testator provided that if any heir should make " any unjust claim " against his estate he should receive $1 in lieu of the bequest mentioned in the will.  A devisee of land which sold for $850 presented a claim for nearly $4,000, which the executor refused to pay and subsequently compromised with the approval of the Court of Probate, the devisee relinquishing the real estate and accepting $1,150 in settlement of the claim.  *Held* that this court could not say upon these facts that the claim as presented was an unjust one within the meaning of the will.

From the net proceeds of certain real estate which the executor was directed to sell, the testator first bequeathed $200, and gave to his two alien brothers " out of the rest, residue, and balance from said sale and residue of my personal estate, share and share alike." *Held* that the direction to sell created a complete equitable conversion of the land into personal property, which, with the residue of the testátor's personalty, vested, one half in one of the alien brothers, and one half in the children of the other brother who had predeceased the testator.

A clause in the will gave to the testator's nephew "all my real and personal property situated in Gaylordsville." *Held* that by "personal property" the testator intended to include debts due him from residents of Gaylordsville, which were secured by mortgage of land adjoining that devised to the nephew.

In common language a debt is not infrequently spoken of as being property at the residence of the debtor, especially when secured by land there situate.

Argued June 5th—decided September 27th, 1901.

ACTION to determine the validity and construction of the will of William Talbot of Greenwich, deceased, brought to the Superior Court in Fairfield County and reserved by that court, *Robinson, J.,* upon an agreed statement of facts, for the consideration and advice of this court.

The facts are as follows : 1. On the 13th day of October, 1896, William Talbot died, leaving a last will and testament as follows, viz: " The last will and testament of William Talbot: I, William Talbot, of the town of Greenwich, County of Fairfield and State of Connecticut, being of sound mind, memory and understanding, do make this my last will and testament in manner and form as follows, to wit: *First.* I direct that all my just debts, funeral and testamentary expenses be paid out of my estate by my executors hereinafter named, as soon as can conveniently be done after my decease. *Second.* I give, devise and bequeath to my nephew, John Talbot, all my real and personal property, situated in Gaylordsville, Litchfield County and State of Connecticut. *Third.* I give, devise and bequeath to Lena Ward of the town of Greenwich, Connecticut, my dwelling-house and lot situated on Talbot avenue, in the town of Greenwich, State of Connecticut, known as my tenant dwelling No. 1.

*Fourth.* I authorize, empower and direct my executors, hereinafter named, or such of them as may qualify, to sell the dwelling-house, out building and land now occupied by me, and also the tenant dwelling-house and land known as tenant dwelling No. 2, situate near the above named property now occupied by me, after my decease as soon as can be done. And out of the net proceeds of said sale, I give, devise and bequeath unto the Methodist Society of Gaylordsville, the sum of two hundred dollars. *Fifth.* I give, devise and bequeath to my two brothers, out of the rest, residue and balance from said sale and residue of my personal estate, to Charles Talbot, residing in Berkshire, England, and Christopher Talbot of Whitney, Oxfordshire, England, share and share alike. *Sixth.* If any heir shall attempt to contest my will or make any unjust claim against my estate, I give and bequeath to such person one dollar instead of any bequest to him mentioned in this will. *Seventh.* I nominate, constitute and appoint William Ritch, of the town of Greenwich, Connecticut, and John Miller, of the village of Port Chester, New York, to be the executors of this my last will and testament, and hereby revoke every other will by me heretofore made.

" In witness whereof," etc.

3. Said will was duly admitted to probate by the Court of Probate for the district of Greenwich. 4. The said John Miller declined and refused to qualify as executor, and the plaintiff, William M. Ritch, on the 28th day of October, 1896, duly qualified as the sole executor of said will, and has ever since acted as such executor. 5. The plaintiff, as such executor, on the 21st day of November, 1896, filed an inventory and appraisal of the property of said estate, with a list of choses in action, showing:

| | |
|---|---|
| Real estate . . . . . . . | $4,200.00 |
| Personal estate . . . . . | 4,092.08 |
| Choses in action . . . . . . | 1,010.00 |
| Total . . . . . . . | $9,302.08 |

6. Said real estate was scheduled as follows, to wit:
" All that certain piece or parcel of land with

the buildings thereon standing, situate at
Gaylordsville, Litchfield County, Con-
necticut, containing in quantity three
acres, more or less, bounded (description
omitted) . . . . . . . $ 500.00
" Tenant dwelling No. 2, house and lot, sit-
uate at East Port Chester, in Greenwich,
Fairfield County, Connecticut, containing
in quantity one quarter of an acre, more
or less, bounded (description omitted) . 700.00
" Tenant dwelling No. 1, house and lot, situ-
ate at said East Port Chester, containing
in quantity ¼ acre, more or less, bounded
(description omitted) . . . . 1,000.00
" (The homestead) house and lot, situate at
said East Port Chester, containing in quan-
tity ½ acre, more or less, bounded (de-
scription omitted) . . . . . 2,000.00
      Total . . . . . . $4,200.00"
7. Said personal property consisted of house-
hold effects appraised at . . . . $ 206.20
And cash in banks, . . . . . 3,885.88
      Total, . . . . . . . $4,092.08
8. The choses in action consisted of note and
mortgage, . . . . . . $ 975.00
Unsecured notes, . . . . . 35.00
      Total, . . . . . . . $1,010.00

9. The household effects above inventoried were sold by
the executor at public auction for $127.12. 10. The home-
stead lot was sold by the executor, May 24th, 1897, for
$2,560. Said property described as " the homestead " in the
inventory, was occupied by the testator at the time of mak-
ing his said will. 11. On May 27th, 1897, the executor sold
tenant dwelling No. 2 for $500. 12. On January 3d, 1900, the
executor sold tenant dwelling No. 1, for $850, the said Lena
Ward having released all her rights therein to said estate, as
hereinafter detailed. 13. Before the time limited for the

presentation of claims against the estate expired, the said Lena Ward, together with her husband, John H. Ward, presented against said estate a claim for $3,904.85, which the executor disallowed, and upon which the said John H. Ward and Lena Ward thereupon brought suit. 14. An agreement was entered into by and between the said John H. Ward and Lena Ward, and the plaintiff, as executor, by which said suit was terminated, and by which said John H. Ward and Lena Ward released all their claims against said estate, and executed and delivered to the plaintiff as such executor a deed of all their interest in and to said tenant dwelling No. 1, in return for $1,150 cash paid them by said executor, which said agreement was duly authorized and approved by the Court of Probate for the district of Greenwich, on the 6th day of December, 1899. 15. Said executor has paid and settled all lawful claims presented against said estate. 16. The executor has on hand for distribution:

| | | | |
|---|---|---|---|
| Proceeds sale homestead, . . . . | | | $2,560.00 |
| "        "    tenant No. 1, . . . | | | 850.00 |
| "        "    "    No. 2, . . . | | | 500.00 |
| "        "    household effects, . . . | | | 127.12 |
| Original cash on hand, . . . . | | | 3,885.88 |
| Choses in action, . . . . . | | | 1,010.00 |
| | | | $8,933.00 |

### Credits.

| | | |
|---|---|---|
| Paid Lena Ward, . . . | $1,150.00 | |
| Paid claims, . . . . | 954.24 | |
| Net on hand, . . . . | 6,828.76 | $8,933.00 |

17. The said Charles Talbot and the said Christopher Talbot, referred to in clause five of the will, were brothers of the deceased of the full blood. The testator left him surviving no wife, child, adopted child, or representatives of children, and no brother or sister or representatives thereof, excepting the said Christopher Talbot and the children of said Charles Talbot named in the succeeding paragraph. 18. The said Charles Talbot predeceased the testator and died on the 15th

day of March, 1896, leaving lawful issue him surviving, to
wit: Charles J. Talbot of Notting Hill Gate, London, Eng-
land; William Talbot of Emsworth, Hampshire, England;
John Talbot of Gaylordsville, Litchfield County, Connecti-
cut; Henry J. Talbot of Faringdon, Berkshire, England;
Frederick D. Talbot of Herne Hill, London, England; Mary
Elizabeth Smith, wife of William Smith, of Islip, Oxford,
England; Ann Stancombe, wife of James Stancombe, of Har-
row Road, London, England. All of said children are now
living and are of age. 19. The said Christopher Talbot sur-
vived the testator and is still living. 20. The said John Tal-
bot is a nephew of the testator and was so considered and
spoken of by the testator, and he is the person mentioned in
the second clause of the will as " my nephew, John Talbot."
21. The testator, his two brothers, Charles Talbot and Chris-
topher Talbot, and his nephew, John Talbot, were born in
England. Said Charles Talbot resided in England until his
death. Said Christopher Talbot has resided in England all
his life and still resides there. The children of Charles Tal-
bot, with the exception of said John Talbot, are all unnatural-
ized aliens residing in England. The said John Talbot is
the nearest of kin to the testator residing in the United States.
22. The testator, William Talbot, came to the United States
about the time of the war of the rebellion, and resided here
until his death. He was naturalized as an American citizen
and was a voter in the town of Greenwich. 23. Said John
Talbot came to the United States at the age of 18 years, in
the year 1869, and became a citizen at the age of 21 years,
and now resides at Gaylordsville, in the town of New Mil-
ford, and is a voter there. 24. The choses in action men-
tioned in paragraphs 5, 8 and 16, consist of notes given to the
testator by persons living in said Gaylordsville. The note
for $975 is secured by a mortgage on real estate situated in
said Gaylordsville, which said real estate adjoins the testa-
tor's real estate, on which the said John Talbot now lives,
and for many years has lived. The said testator had no per-
sonal property situated in Gaylordsville, except these notes
and the above referred to mortgage. 25. The following ques-

tions have arisen relative to the construction of certain of the provisions contained in said will, and as to the duty of the plaintiff in the administration of his trust, as follows: *First.* What is the construction of the residuary clause of the will? Did the testator intend thereby to give to his two brothers therein named, the remainder of the proceeds of the sale of the real estate ordered sold in the preceding paragraph (after paying the legacy to the Methodist Society) and the residue of his personal estate? *Second.* Does the provision in the will authorizing, empowering and directing the qualifying executor to sell the homestead, and tenant dwelling No. 2, and to distribute the net proceeds after deducting $200 for the Methodist Church, with the residue of the personalty, in equal shares to the two alien brothers, so affect the character of the property as to allow the nonresident aliens to participate in the proceeds? Does this constitute a complete equitable conversion? *Third.* If so, does the provision in favor of Charles Talbot become a lapsed legacy, and if so, what disposition shall be made of that portion of the estate? *Fourth.* Is the gift to the two brothers, provided for in the fifth clause, a provision for a class or for individuals? *Fifth.* Does the death of Charles Talbot, or any other cause, so affect the attempted equitable conversion as to render it ineffective with reference to the said share of Charles Talbot? And if so, does said share become a lapsed devise and, in that event, does it escheat to the State, or can John Talbot take? *Sixth.* Does the death of Charles Talbot, or any other cause, so affect said attempted equitable conversion that the entire estate affected thereby is to be regarded as real estate? And in that event who is entitled to take, if any one? *Seventh.* Is John Talbot an heir-at-law of the testator and entitled to participate in the distribution of the intestate estate, if any? *Eighth.* Is the status of John Talbot fixed by the terms of the will as "nephew" and heir of the deceased, or must he have his right of succession through his father, and if so, can he take at all? *Ninth.* Are the issue of said Charles Talbot, deceased, entitled to participate in the distribution of the estate, and if so, to what extent? *Tenth.* Are the proceeds of the sale of

the tenant dwelling number 1, to be considered as real or personal property, for the purposes of distribution? Does the transaction with John H. Ward et ux. affect this question? *Eleventh.* Is any portion of the estate intestate, or does the residuary clause contemplate lapses? *Twelfth.* Does John Talbot take the Gaylordsville notes and mortgage by virtue of the second clause of the will, or in any other way?

*Arthur D. Warner* and *Frederic M. Williams,* for John Talbot.

*Frederick C. Taylor,* for Christopher Talbot, Elizabeth Talbot et al.

HAMERSLEY, J. The transaction between Lena Ward and the executor in effect gave to Lena the land devised to her, and settled her claim against the estate for the sum of $300. This settlement was approved by the Court of Probate, and we cannot say from the facts appearing in the record that the claim as first presented against the estate was an unjust claim, within the meaning of the sixth clause of the will.

The fourth and fifth clauses of the will treat the real estate therein mentioned as personal property, and the directions to sell create a complete equitable conversion of the land into personal property.

The fifth clause fairly expresses the intention of the testator to give to his two brothers the residue of his personal property, including the balance of the proceeds from the sale of real estate, mentioned in the fourth clause, after paying the bequest of $200 to the Methodist society of Gaylordsville.

The bequest to the two brothers, Charles and Christopher Talbot, was one to them individually and not to them as a class. By operation of § 541 of the General Statutes, the legacy to Charles Talbot was in legal effect a gift to him, and to his issue in case he should not survive the testator; the legacy therefore did not lapse by reason of his death.

By the second clause of the will the testator gives to his nephew, John Talbot, "all my real and personal property, situated in Gaylordsville, Litchfield county and State of Connecticut."

Ritch *v.* Talbot.

In view of the facts appearing in the record, we think the testator intended by "personal property" to include the debts due him from residents of Gaylordsville. These debts appear to be all the personal property he had, except his household furniture and the money in bank mentioned in the inventory. His nephew, John Talbot, was the only one of his relatives who had lived near him, and to whom he made any specific gift. The mortgage debt, which forms substantially the whole of the debts due from residents of Gaylordsville, was secured by mortgage on land adjoining land devised to his nephew, and the intent to give him that mortgage debt in connection with the land adjoining that securing the debt, might be expressed by the phrase "all my real and personal property situated in Gaylordsville." It is true that ordinarily, and in the absence of any modifying legislation, the *situs* of a debt follows the person of the creditor. In the case of mortgage debts especially, the residence of the debtor, as well as the place where the mortgage securities are held, have in some jurisdictions been treated for certain purposes as the *situs* of the mortgage debt. But in common language, a debt is not infrequently spoken of as being property at the residence of the debtor, especially when secured by land there situate. The question before us is not one of legal *situs*, but of what the testator under the circumstances of this case meant when he spoke of "all my real and personal property in Gaylordsville."

The personal property remaining in the hands of the executor for distribution should be divided as follows: 1. The choses in action, to the nephew John Talbot. 2. Two hundred dollars to the Methodist Society of Gaylordsville. 3. One half of the remainder to the brother Christopher Talbot, and the other half, in equal parts, to the children of the brother Charles Talbot.

The Superior Court is advised to render judgment in accordance with the above opinion.

No costs will be taxed in this court.

In this opinion the other judges concurred.