THE STATE OF NEW JERSEY, PLAINTIFF IN ERROR, v.
STANLEY KARPOWITZ, DEFENDANT IN ERROR.

Argued November 21, 1922—Decided March 5, 1923.

1. Under the act of April 12th, 1921 (*Pamph. L.*, p. 951), providing
   that in criminal cases courts of appeal may review the question
   whether a verdict of guilty is against the weight of the evidence,
   the appellate court will weigh the evidence in the same manner
   as upon a rule to show cause in a civil case, where the verdict is
   alleged to be against the weight of the evidence.
2. To justify a court in setting aside a verdict in a criminal case on
   the ground that it is against the weight of the evidence, the
   verdict must so clearly appear that it is against the weight of the
   evidence as to give rise to the inference that it is the result of
   mistake, passion, prejudice or partiality.
3. The mere number of witnesses testifying upon one side of a case
   is no guide for the determination of the weight of the evidence.

On writ of error to the Supreme Court.

For the plaintiff in error, *John O. Bigelow.*

For the defendant in error, *Charles M. Mason.*

The opinion of the court was delivered by

KATZENBACH, J.   The defendant in error, Stanley Karpo-
witz, was indicted by the Essex county grand jury for atrocious
assault and battery upon Robert Hummel. Karpowitz was tried
by the Essex County Court of Quarter Sessions and convicted.
He removed the judgment to the Supreme Court by writ of
error. The entire record was certified to the Supreme Court
under section 136 of the Criminal Procedure act.   One of the
specifications of causes for reversal was that the verdict was
contrary to the weight of the evidence.   The Supreme Court
reversed the judgment upon this ground.   The other grounds
for reversal were decided in favor of the state.   From the
judgment of the Supreme Court the state has taken a writ of
error and seeks a reversal of the judgment of the Supreme

Court and an affirmance of the judgment of the Essex Quarter Sessions.

The evidence shows that on April 5th, 1921, Hummel, the complaining witness, who lived at Bloomfield with his parents, was calling upon a friend, a young woman, who asked him to go to a bakery and purchase for her a loaf of bread. Hummel says he left the house about nine P. M., and rode his bicycle to a store. Just as he arrived at the store he was hit in the breast by a stick. He placed his bicycle against the store window. While in the store he saw a leg kick over his bicycle. He rushed from the store, saw a number of boys outside, and said to them, "Which one of you fellows kicked over that wheel? You fellows are always looking for trouble. A fellow cannot come up to this end of the town unless he is molested." He was then struck a blow over the back of the head. He remembers that he was on his back, then he remembers standing in a circle; that the boys were hitting him and yelling "Kill him Karp" (Karp was the nickname of the defendant in error); that he knew nothing until he woke up at a hospital at six A. M., the following morning. It appeared from other testimony that he went back to the house of the young woman upon whom he had been calling, with his collar and tie torn off, his clothes soiled, and physically weak, and while attempting to wash his face, fell unconscious. A doctor was called and he was taken to the hospital. The medical testimony showed that he had a fracture at the base of the skull on the right side, bruise marks on his chest and back, and a spinal puncture. He was operated on and the brain pressure relieved by removal of some of the bone and drawing of fluid from the brain. He remained at the hospital about six weeks, was then removed to his home, and confined to his bed. The trial was some seven months after the occurrence. He was then under the care of a physician. He had a peculiar jump or inability to walk, impaired eyesight, and considerable pain in the head and back.

The version of the affair, given by Karpowitz and his four companions, was that Hummel's wheel fell to the sidewalk

accidentally; that thereupon Hummel rushed from the store using improper language, aimed a blow at Karpowitz, which did not land; that Karpowitz then hit Hummel on the jaw. Hummel fell and was picked up by one of the crowd. Hummel then re-entered the store, came out with a bottle of soda raised over his head, which he threw at Karpowitz. Hummel and Karpowitz grabbed one another but were immediately separated. Karpowitz and his friends ran away. Hummel threw stones at them and then mounted his bicycle and rode away. The Supreme Court said: "The ground on which we think this judgment should be reversed is that in our judgment the verdict was against the weight of evidence. A careful examination of the testimony leads us to the conclusion that the complaining witness began the attack by striking or attempting to strike with his fist one of the group of which mention has been made, and that he was felled to the ground by a return blow, striking on the back of his head and sustaining the injuries in question by the fall."

In the case of *State* v. *Knight*, 96 *N. J. L.* 461, this court upheld the constitutionality of the act of April 12th, 1921 (*Pamph. L., p.* 951), which provides that in criminal cases courts of appeal may review the question whether a verdict of guilty is against the weight of the evidence. In the case of *State* v. *Morehous*, 97 *N. J. L.* 285, this court said: "This statute (referring to the act of April 12th, 1921) requires that an assignment of error be made that the verdict is against the weight of the evidence. The effect of such an assignment is the same as that on a rule to show cause where the reason assigned is that the verdict is against the weight of the evidence. The competency of the evidence is not to be considered. The evidence is not to be weighed after eliminating such testimony as the court upon review may feel was improperly admitted, but to be weighed as it was presented to the jury in its totality."

The rule of weighing evidence has thus been pronounced in this court to be the same in a criminal case as in a civil case.

To justify a court in setting aside in a civil case a verdict of a jury on the ground that it is against the weight of the evidence, it must so clearly appear as to give rise to the inference that it is the result of mistake, passion, prejudice or partiality. *Floersch* v. *Donnell,* 82 *N. J. L.* 357; *Queen* v. *Jennings,* 93 *Id.* 353.

The fact that the witnesses for the defence outnumbered those of the plaintiff does not in itself establish the weight of the evidence. *Bauman* v. *Hamburgh American Packing Co.,* 67 *N. J. L.* 250; *Goldman* v. *Central Railroad Co. of New Jersey,* 79 *Id.* 205. The credibility of a witness and the weight to be given to his testimony, involve the consideration of many other matters, such as his personal interest in the subject-matter in controversy, his opportunity of observation or knowledge of the subject about which he is testifying, the influences under which he may be testifying, his demeanor on the witness stand, &c., all of which are circumstances for a jury, who see the witness, to consider in determining what credit and weight should be given to the witness and his testimony. *Floersch* v. *Donnell, supra.*

Our courts have uniformly declared that the mere number of witnesses testifying upon one side of a case is no guide for the determination of the weight of the evidence. In the case of *O'Brien* v. *State,* 63 *N. J. L.* 49, two witnesses testified for the state as to an assault. The defendant testified in his own behalf. The trial court, in its charge, after reciting the evidence as given by the state's witnesses, said: "On the other hand, O'Brien (the defendant) swears to an entirely different state of the case. He swears to that alone, and, therefore, you are obliged to believe the witnesses of the state if they tell consistent stories." In considering the propriety of this portion of the charge, the Supreme Court said: "In this instruction to the jury there was, in the opinion of this court, injurious error. Its effect was to deprive the plaintiff in error of the right to have the jury decide, after having seen the various witnesses, and heard him testify, how much or how little credit should be given to the testimony of each."

In the case of *Clark* v. *Public Service Electric Co.*, 86 *Id.* 144, this court held that that credibility of witnesses was for the jury.

This court said, in *Schmidt* v. *Marconi Wireless Telegraph Co.*, 86 *N. J. L.* 183, that the uncontradicted testimony of a man whose character for truth and integrity is universally known, should nevertheless be submitted to the jury.

These cases establish that it is the province of a jury to pass upon the questions of the credibility of witnesses and the weight to be accorded to their testimony.

It is perhaps unnecessary to say that those who have the opportunity of personally seeing and observing the demeanor of witnesses are best qualified to judge of the credibility of witnesses and the weight to be accorded their testimony. Testimony which seems convincing in print would often be unconvincing if heard in court from the lips of witnesses.

Appellate courts should be cautious in setting aside a verdict of a jury upon the ground that the verdict is contrary to the weight of the evidence. It should only be done when it is clear that the verdict is the result of mistake, passion, prejudice or partiality.

In the present case we cannot agree with the decision reached by the Supreme Court. It is true that the witnesses for the defence outnumbered the witnesses for the state and that the state's evidence as to the assault principally came from the complaining witness. But the weight of the testimony is not always with the side having the greater number of witnesses. The testimony of Karpowitz and his witnesses, Nevrocki, Yasky, Zbikowski, and Sturn are strikingly similar. They all testify that Hummel received one blow, delivered on the chin by Karpowitz. Hummel's injury was a fracture at the base of the skull. This injury would not likely result from a blow on the chin. The Supreme Court, in its opinion, says that Hummel "was felled to the ground by a return blow, striking on the back of his head and sustaining the injuries in question by the fall." This version is not even borne out by the testimony of the defendant's witnesses. Yasky testified that

when Hummel was hit he went down in a sitting position, with his feet out straight and then went back slowly on soft ashes. Sturn testified that Hummel sat down and "did not fall straight down on his head." Nevrocki testified that Hummel, after Karpowitz hit him, "fell in a sitting position." Zbikowski said, "First he (Hummel) sat down on the ground, then keeled right over and hit his head on the cinders." This testimony refutes the theory advanced by the Supreme Court that the fracture of the base of the skull was caused by the force with which Hummel struck the ground.

There was no question that the base of Hummel's skull was fractured and there was a wound or bruise on his chest. Are not these wounds such as to corroborate the testimony of Hummel to the effect that when he arrived at the store he was hit on the breast with a stick and that when he came out to remonstrate about the kicking over, as he believed, of his wheel, he received a blow over the back of his head. We are of the opinion that the statement of Hummel is corroborated by the nature of his wounds and that the testimony of the defendant's witnesses discredits their version of the way in which Hummel's admittedly serious injuries were received. For these reasons we feel that the jury was justified upon the evidence in returning the verdict of guilty. This leads to the reversal of the judgment entered in the Supreme Court and the affirmance of the judgment of the Essex County Court of Quarter Sessions.

*For affirmance*—SWAYZE, BERGEN, JJ. 2.

*For reversal*—THE CHANCELLOR, TRENCHARD, BLACK, KATZENBACH, WHITE, GARDNER, ACKERSON, VAN BUSKIRK, JJ. 8.