THOMAS J. SHANNON, ADMINISTRATOR C. T. A. (ESTATE OF ANNA J. E. ENO *vs.* FRANK C. ENO ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, JS.

Argued April 3d—decided June 4th, 1935.

*Charles M. Lyman,* with whom were *Clarence W. Bronson* and *William F. Healey,* for the appellants (exclusive of Frank C. Eno).

*Ellsworth B. Foote,* with whom, on the brief, were *David E. FitzGerald* and *John Clark FitzGerald,* for the appellant (defendant Frank C. Eno).

*James E. Rhodes, 2d,* for the appellees (defendants Gertrude S. Booth *et als.*).

MALTBIE, C. J. This action, seeking the construction of certain provisions in the will of Anna J. E. Eno, came before the Superior Court for decision upon the facts admitted in the pleadings. Certain related

questions arise as to the twentieth and twenty-first paragraphs of the will. The twentieth paragraph reads as follows: "I give the sum of two thousand dollars for the purpose of founding and supporting a Catery, to be situated in or near Ansonia, for the care of homeless animals and boarders." In the fourth paragraph of the will the testatrix gave to her husband a certain sum of money "in trust, however," the income to be paid to him semi-annually during his life, "together with" the use of certain real estate on Franklin Street in Ansonia, these gifts being subject to certain conditions; and in the twenty-first paragraph she devised and bequeathed the real estate at his death or should he not meet the conditions named, "to be used as and for an Old Ladies Home for worthy poor protestant women over sixty years of age, residing in and inhabitants of the towns of Ansonia, Derby and Seymour;" and she made a further gift to "said Old Ladies Home, when established," of the sum of $5000 and the household furniture and fixtures not otherwise disposed of in the will. In the twenty-fourth paragraph she appointed her friend Reuben H. Tucker "as executor and trustee of my estate, and of this my last will and testament."

While the twentieth and twenty-first paragraphs do not expressly state that the devise and bequests contained in them are made in trust, it is obvious that the provisions could only be executed through the intervention of a trustee and it sufficiently appears from the will as a whole that she intended these gifts to be in trust. *Beardsley* v. *Selectmen of Bridgeport,* 53 Conn. 489, 492, 3 Atl. 557; *Ryder* v. *Lyon,* 85 Conn. 245, 82 Atl. 573; *Brinsmade* v. *Beach,* 98 Conn. 322, 336, 119 Atl. 233; *Cheshire Bank & Trust Co.* v. *Doolittle,* 113 Conn. 231, 232, 115 Atl. 82. The paragraphs of the will other than those we have mentioned

contain directions to the executor or gifts to individuals or corporations. When, in the twenty-fourth paragraph, the testatrix appointed Reuben H. Tucker "trustee of my estate" it was evidently her intent that he should as such trustee hold and manage the property disposed of in the fourth, twentieth and twenty-first paragraphs. A devise and bequest of the property to him as such trustee is implied. *Ryder* v. *Lyon,* supra, p. 250; *Angus* v. *Noble,* 73 Conn. 56, 62, 46 Atl. 278; *Shepard* v. *Union & New Haven Trust Co.,* 106 Conn. 627, 633, 138 Atl. 809. That·Reuben H. Tucker died before the testatrix, as the admitted facts show, would not destroy the trust, if otherwise valid, for the court could appoint another trustee. *Dailey* v. *New Haven,* 60 Conn. 314, 325, 22 Atl. 945; *Babcock* v. *African Methodist Episcopal Zion Society,* 92 Conn. 466, 473, 103 Atl. 665; *City Missionary Society* v. *Moeller Memorial Foundation,* 101 Conn. 518, 528, 126 Atl. 683; *Hartford National Bank & Trust Co.* v. *Oak Bluffs First Baptist Church,* 116 Conn. 347, 356, 164 Atl. 910.

The intention of the testatrix in making the gift in the twentieth paragraph was obviously to afford care and protection to and alleviate the sufferings of that class of animals which by domestication contribute to comfort, pleasure and well being of man; and it is not questioned that such a gift is a proper charitable use. *Minns* v. *Billings,* 183 Mass. 126, 130, 66 N. E. 593; *In re Graves,* 242 Ill. 23, 89 N. E. 672; *In re Coleman's Estate,* 167 Cal. 212, 214, 138 Pac. 992; 66 A. L. R. 465, note. Nor are the terms of the gift in this paragraph too uncertain in themselves to constitute a valid trust. *Mack's Appeal,* 71 Conn. 122, 135, 41 Atl. 242; *Eliot's Appeal,* 74 Conn. 586, 51 Atl. 558; *Brinsmade* v. *Beach,* supra.

With reference to the gift in the twenty-first para-

graph, it is argued that as the property is devised and bequeathed to establish a home for "worthy poor protestant women over sixty years of age" residing in the three towns named, and no power is given to the trustee to select from among them the particular persons who are to be admitted to the institution, the trust is void for uncertainty. In *White* v. *Fisk*, 22 Conn. 31, we had before us a will in which the testator made a devise and bequest of his property to two individuals as trustees, with a provision that they expend a portion of the income "for the support of indigent pious young men, preparing for the ministry, in New Haven, Conn." We held this gift to be void for uncertainty. We pointed out that the gift was not to any college or institution, nor to any association of persons corporate or voluntary, which had or might have an interest in the object of the charity and rules for its management; we distinguished cases where in gifts of like nature a power in the trustee to discriminate or select or to apportion the application of funds was "certainly conferred" or "clearly given;" and we held that the terms of the will before us were not such that the necessary power of selection would be implied.

In so far as it was held in that case that a gift, though in the nature of a charity, made directly to a class of beneficiaries generally defined is too uncertain for enforcement and that it is necessary either that the will establish a mode of selecting the individual persons to be benefited or that a power to make such selection be conferred upon the trustee or someone else, we have followed that decision. *Treat's Appeal,* 30 Conn. 113, 116; *Adye* v. *Smith,* 44 Conn. 60, 70; *Fairfield* v. *Lawson,* 50 Conn. 501, 513; *Coit* v. *Comstock,* 51 Conn. 352, 379; *Bristol* v. *Bristol,* 53 Conn. 242, 257, 5 Atl. 687; *Strong's Appeal,* 68 Conn. 527, 531, 37 Atl. 395; *Hoyt* v. *Bliss,* 93 Conn. 344, 351, 105

Atl. 699. But beyond this general principle *White* v. *Fisk* has ceased to be authoritative. Thus in *Goodrich's Appeal,* 57 Conn. 275, 18 Atl. 49, we sustained a gift to an individual in trust for a Protestant Episcopal Society, the income "to be given to the poor of said society," holding that the trustee was to distribute the income to such poor persons as the rector of the Society might select; in *Conklin* v. *Davis,* 63 Conn. 377, 383, 28 Atl. 537, we sustained a gift to the trustees of a church "in trust for the poor of the church;" in *Eliot's Appeal,* 74 Conn. 586, 598, 51 Atl. 588, where property was given in trust "for the aiding of destitute seamen," we held that the power to select the particular members of the class to be benefited was necessarily implied; in *Weeks* v. *Mansfield,* 84 Conn. 544, 80 Atl. 784, we had before us a trust gift "for the support of indigent insane persons" and we treated the trust as a valid one; and in none of these cases was any power of selection given to the trustee except such as might be implied from the terms of the gift itself. So we have ceased to follow the distinction drawn in *White* v. *Fisk* between gifts to trustees who are individuals and those made to corporate or voluntary associations. Thus where property was given to a city in trust to apply the income "for the supply of fuel and other necessaries to deserving indigent persons not paupers, preferring such as are aged or infirm," we held that the city was without power to accept the trust, but said that application could be made to the court for the appointment of a trustee or trustees to administer it. *Dailey* v. *New Haven,* 60 Conn. 314, 325, 22 Atl. 945.

Our law now may be summed up to this effect: If property is given for a charitable use in trust for the benefit of a certain class of persons defined with reasonable certainty, and in order to execute that trust a

power of selection in the trustee or someone else is necessary, that power will be implied; and in the application of this rule no distinction is made between trustees who are corporate or voluntary associations and those who are individuals. *Tappan's Appeal,* 52 Conn. 412, 417; *New Haven Young Men's Institute* v. *New Haven,* 60 Conn. 32, 40, 22 Atl. 447; *Woodruff* v. *Marsh,* 63 Conn. 125, 26 Atl. 846; *Hayden* v. *Connecticut Hospital for Insane,* 64 Conn. 320, 324, 30 Atl. 50; *Eliot's Appeal,* 74 Conn. 586, 598, 51 Atl. 558; *Dwyer* v. *Leonard,* 100 Conn. 513, 517, 124 Atl. 28. Indeed, to so hold, is but to carry out what must have been the intent of the testatrix, who must certainly have realized that in a gift to a general class, selection of the persons to be benefited would be a necessary incident of administering the trust. The provisions of the twenty-first paragraph established a trust not too uncertain to enforce. *Mack's Appeal,* 71 Conn. 122, 41 Atl. 242. The power to decide as to the best means of carrying out the trust "is impliedly given to" the trustee. "It inheres in the trust." *Eliot's Appeal,* supra, p. 607.

With reference to the gift of $2000 in the twentieth paragraph, it was admitted by all parties that the sum given was insufficient to carry out the purposes of the testatrix in exact accord with the language of the provision, that there was no institution located in or near Ansonia for the care of such animals as were described in it, but that the Connecticut Humane Society may under its charter care for homeless animals in any part of the State. With reference to the gift in the twenty-first paragraph, it was admitted that the devise and bequest was insufficient to carry out the purposes of the testatrix in exact accordance with the language used, that there is not now in existence any home for old ladies in any of the towns of Ansonia, Derby or

Seymour, but that there are various institutions now in existence which render charitable services to such women as are described in the paragraph, among them being Griffin Hospital and the Immanuel Episcopal Church of Ansonia. The trial court applied to both of the gifts the doctrine of approximation; it directed that the sum given in the twentieth paragraph should be paid to the Connecticut Humane Society, the principal to be held in trust and the income to be used for the general purposes of the Society; and it decreed that the administrator c. t. a. of the estate should reserve $5000 and on the death of Mr. Eno should transfer this sum and the Franklin Street property to the Griffin Hospital, with power to sell the real estate under the provisions of §§ 5925 and 5926 of the General Statutes, and it directed that the Hospital should hold the whole proceeds as a fund the income to be applied in accordance with the general charitable purposes expressed in this paragraph of the will.

We have never assumed to exercise the prerogative power of the English Crown to direct the application of property given for a charitable purpose which is illegal but which except for such illegality would be charitable, or where it is given simply to charity without indicating further the character of the purpose or that a trustee is to administer it. Amer. Law Institute Restatement, Trusts (Tentative Draft No. 5) § 389, Comment *e;* (Proposed Final Draft) § 389; *White* v. *Fisk,* 22 Conn. 31, 54; *Adye* v. *Smith,* 44 Conn. 60, 70. The Restatement summarizes the general rule of law under which courts in this country apply a modified cy pres doctrine, or the doctrine of approximation, as follows: "If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the

settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general purpose of the settlor." Restatement, Op. Cit., § 389. In a number of cases we have approved the application of the doctrine thus generally stated where after the administration of a trust has begun, circumstances have arisen such that the method by which the testator sought to accomplish the charitable purpose intended cannot be carried out and, speaking of such a situation, we said in *Newton v. Healy, Attorney General,* 100 Conn. 5, 10, 122 Atl. 654: "It is now certain that the Superior Court, as a court of equity, possesses the power to carry out the general intent of the donor of a testamentary charitable trust, when clearly manifested, though the particular form or manner pointed out by the testator cannot, because of changed conditions, be followed." In addition to the cases there cited, see *Birchard* v. *Scott,* 39 Conn. 63, 68; *Weeks* v. *Mansfield,* 84 Conn. 544, 554, 80 Atl. 784; *Hewitt* v. *Beattie,* 106 Conn. 602, 622, 138 Atl. 795; *Bankers Trust Co.* v. *Greims,* 108 Conn. 259, 266, 142 Atl. 796; *Russell* v. *Russell,* 109 Conn. 187, 196, 145 Atl. 648.

The essential foundation for the application of the doctrine is the same where the defect in the method of administering the trust provided by the testator is present at the time of his death, as it is where thereafter it becomes impossible to carry it on as directed. Thus in *Newton* v. *Healy, Attorney General,* supra, we cite in support of what we there said the case of *Philadelphia* v. *Girards Heirs,* 45 Pa. St. 9, which dealt with the exercise of the power in order to give effect to a trust which would otherwise never have come into existence. In *Hayden* v. *Connecticut Hospital for*

*Insane,* 64 Conn. 320, 324, 30 Atl. 50, where we were considering a trust to establish free beds for female patients at a named hospital for the insane, we pointed out that, if that institution was without power to afford the means to carry out the provisions of the trust, the trustees should use the income for the benefit of persons described in the will "in such ways as may be open, according most nearly to that designated by the testatrix." The effect of action by the court within this power is to carry out the real or dominant intention of the testator, though the particular method of accomplishing that purpose is not provided or is ineffectually provided in the will, or proves impossible or impracticable. In *Hayden* v. *Connecticut Hospital for Insane,* supra, we said: "To hold this is in no sense to invoke the English sign manual Crown prerogative doctrine of cy pres. It is only to apply the judicial principle of construction to ascertain and effectuate intention, . . . as this court has done in previous cases."

The dominant purpose of the testatrix in the twentieth paragraph was to afford protection and care for the animals coming within its purview and the establishment of a "Catery" was the means she proposed for that end. As that means cannot be made available because the sum of money given is insufficient and as the dominant purpose of the testatrix can be very closely carried out through another means, a situation apt for the application of the doctrine of approximation was presented, as the trial court held. The Connecticut Humane Society is engaged throughout the State in giving to animals the very protection and care the testatrix had in mind and to the designation of the Society to receive the gift there is no sound objection. While none of the parties raised any objection to the form of the judgment, there is one aspect

of it which, in dealing with a trust of this nature, we cannot overlook. In exercising its power under the doctrine of approximation, a court seeks just as nearly as may be to effectuate the intent of the testator. *Hayden* v. *Connecticut Hospital for Insane,* supra; Amer. Law Institute Restatement, Op. Cit., § 389, Comment *e.* The charter of the Connecticut Humane Society is very broad as regards the powers given it and it is by no means restricted to the care and protection of animals. 9 Special Laws, pp. 241, 242. Its reports indicate that it devotes a considerable portion of its funds and energies to the protection of neglected children; but they also show that it does maintain or has maintained at Hartford, New Haven and Bridgeport shelters for animals. The provision in the judgment that the income of the fund should be used "for the general purposes of the society" is too broad; it should be modified to restrict the use of the money to the care and protection of such animals as the testatrix had in mind; and, on further hearing, it might appear to be possible to provide that the income of the fund should be devoted toward the maintenance by the Society of an institution intended for their protection and care in the general vicinity of Ansonia.

With reference to the provisions of the twenty-first paragraph, the trial court was correct in applying the doctrine of approximation to the gift there made. The dominant purpose of the testatrix was to provide assistance to "worthy poor protestant women over sixty years of age" residing in the towns named, by furnishing to them shelter, food and care. That it is not possible to carry out the means she designated to accomplish that purpose should not defeat it if, in substance, it may be affectuated in another way. The judgment of the court providing that the Griffin Hospital shall hold and administer the trust is not open to

reasonable attack. But again we cannot pass over certain terms of the judgment, although they are not questioned by any of the parties. The provision that the income should be applied "in accordance with the general . . . purposes" expressed in the paragraph of the will is too broad to sustain upon this record, for the reasons we have given with reference to the gift in the twentieth paragraph. The judgment should direct that the income should be used by the Hospital for the shelter, support and care of women within the class described in the paragraph either within the Hospital or, if not needed for that purpose, within their own homes, the homes of others or other institutions.

The judgment postpones the placing of the property in the hands of the Hospital until the death of Mr. Eno. He elected to take, in place of the provisions made for him in the will, his statutory share in the estate; distributors to set out that share, appointed by the Court of Probate, included in the property set to him the Franklin Street premises; but they attached to their distribution a statement that they had treated this real estate as being land which they could legally set out to him and if it should be adjudicated that this could not be done the distribution would have to be amended. The distribution of this property to him defeats the will of the testatrix in that it gives to him without condition the life use of the premises, of which she gave to him in her will the life use only subject to certain conditions; and, while it was her intent, should he not accept those conditions, that the charitable devise and bequest should become at once effective, under the distribution the charitable use, despite his failure to accept them, is postponed until his death. Where a husband elects to take a statutory share in lieu of provision made for him by will, in

setting off to him that share, the intent of the testatrix must be as little disturbed as is possible. *Farmers' Loan & Trust Co.* v. *McCarty,* 100 Conn. 367, 371, 120 Atl. 40; *Meek* v. *Trotter,* 133 Tenn. 145, 154, 180 S. W. 176; *Lilly* v. *Menke,* 143 Mo. 137, 149, 44 S. W. 730; *Trustees Church Home* v. *Morris,* 99 Ky. 317, 323, 36 S. W. 2; *Portuondo's Estate,* 185 Pa. St. 472, 473, 39 Atl. 1105; *Compton* v. *Rixey's Exrs.,* 124 Va. 548, 559, 98 S. E. 651.

Again, the premises in question are specifically devised in the will. The general rule is that, unless the will indicates a contrary intention, in satisfying debts and charges against an estate, land specifically devised is the last property to be taken. *Hewitt* v. *Sanborn,* 103 Conn. 352, 371, 130 Atl. 472; *Hewitt* v. *Beattie,* 106 Conn. 602, 620, 138 Atl. 795. So where an estate is insufficient to discharge all legacies and devises, general legacies abate before specific devises or legacies. *Weed* v. *Hoge,* 85 Conn. 490, 493, 83 Atl. 636. On like grounds, where a husband elects to take his statutory share of an estate in lieu of the provisions made for him in the will of his wife, general legacies are first to be taken to satisfy that share, before specific devises or legacies are to be disturbed. *Gallagher's Appeal,* 87 Pa. St. 200; *In re Vance's Estate,* 141 Pa. St. 201, 21 Atl. 643; *Pace* v. *Pace,* 271 Ill. 114, 120, 110 N. E. 878; *Dunlap* v. *McCloud,* 84 Ohio St. 272, 95 N. E. 774; *Baptist Female University* v. *Borden,* 132 N. C. 476, 488, 44 S. E. 47; *Timberlake* v. *Parish's Exr.,* 5 Dana (Ky.) 345, 353. The distribution of the premises to the husband was, so far as this record shows, in violation of these principles; and as that distribution is expressly conditioned upon its legality, the probate proceedings place no bar in the way of the immediate transfer of the premises to the

Hospital, as well as of the money given in the paragraph.

Nor can that portion of the judgment authorizing a sale of the premises be sustained. Not only was such a provision outside any issue raised before the court, but there was no such application for an order of sale as the statutes referred to contemplate; nor could such a decree be made in an action to which the trustee is not a party. The judgment should also specify that the property is to be transferred to the Hospital in trust, so as to make it clear that it will be held in that capacity, and not as a part of the corporate funds of the Hospital, to be used for certain of its corporate purposes. *Lyme High School Association* v. *Alling, Attorney General,* 113 Conn. 200, 204, 154 Atl. 439.

The twenty-third paragraph of the will reads as follows: "All the rest and residue of my property of whatsoever the same may consist or wheresoever situated, I direct be equally divided between my cousins residing in Connecticut, and Eli Seeley, now residing in the city of Boston, in the State of Massachusetts, grandchildren of said Abner and Lucy Seeley, or their direct descendants, namely: Henry Seeley, Mary E. Seeley, Lucy Hull, William O. Beach, Ida Burr, Marietta S. Sherwood, Julia Walker, Susan Smith, and the said Eli Seeley, and I also direct that after the death of my said husband Frank C. Eno, the twenty thousand dollars set aside in paragraph fourth, or what remains thereof, be equally divided between the cousins above named in this paragraph, or their direct descendants." Mary Seeley died before the testatrix without issue. The trial court held that the gift in this paragraph was one to a class. In *Bolles* v. *Smith,* 39 Conn. 217, 219, we said: "It is a general rule of construction that where a legacy is given to two or more

persons, *nominatim,* to be equally divided among
them, and one of them dies before the testator, his
share will become intestate; but where the legacy is
to two or more as a class, the share of a deceased
legatee goes to the survivor or survivors.  Prima facie
joint legatees take as a class; otherwise where the
legacy is given to them as tenants in common.  All
these rules however yield to the manifest intention of
the testator, as gathered from the whole will, viewed
in the light of the surrounding circumstances."  In
*Allen* v. *Almy,* 87 Conn. 517, 524, 89 Atl. 205, this
court, by PRENTICE, C. J., discussed the question of
class gifts at some length and the opinion points out
that a gift to a class creates in effect a joint tenancy,
with the right of survivorship incident to it, that such
tenancies are not favored in our law, and that the
presumption is that where a gift is made to several
they take as tenants in common, without right of
survivorship.  In that case it was also pointed out that
provisions looking to a division of the property have
always, even under the common-law rule which favors
joint tenancies, been regarded as sufficient to create
a tenancy in common; and *Griswold* v. *Johnson,* 5
Conn. 363, was cited.  In that case, in discussing the
devise of a tract of land to testator's two named sons,
we said (p. 365): "If an estate is given to a plurality
of persons, without any restrictive, exclusive and ex-
planatory words; from the nature of the case, they are
tenants in common.  2 Bla. Comm., 192, 180.  If the
grant superadds, that the property 'is to be equally
divided' between them, the estate is held in common,
because these words are inapplicable to a several
estate."

These rules of construction are illustrated by the
following cases, in each of which the gift was held to
be one not to a class: *Bill* v. *Payne,* 62 Conn. 140,

25 Atl. 354, where we considered a gift of property to the testatrix's sister and nephews and nieces, all named, to be equally divided between them; *Morris v. Bolles,* 65 Conn. 45, 31 Atl. 538, where the gift was to the testator's children "here named," stating their names, to be "paid in equal parts," the court, apart from the principles announced in the earlier cases we have cited, particularly resting its decision upon the phrases we have quoted; *Rockwell v. Bradshaw,* 67 Conn. 8, 34 Atl. 758, where there was a gift of a part of the residue to be paid and divided equally between the testator's nephew, his sister and her son, daughter and grandchildren, all named, the will in that case containing some confirmatory provisions; *Humason v. Andrews,* 72 Conn. 595, 45 Atl. 354, where a life use was given to the testator's daughters, who were named, "share and share alike;" *Ritch v. Talbot,* 74 Conn. 137, 50 Atl. 42, where the gift was to the testator's two brothers, who were named, "share and share alike;" *White v. Smith,* 87 Conn. 663, 89 Atl. 272, where the will directed the property "to be divided equally between the three children" of the testator's brother, naming them; *Lee v. Lee,* 88 Conn. 404, 91 Atl. 269, where the executors were directed to divide the residue of the testator's estate into six equal parts and to pay over or hold in trust each of those parts for a separately named child.

In the will before us, the indicia of a gift to the persons designated as individuals, rather than as a group, which have been referred to in the cases we have cited, are present; the property is to "be equally divided" among the persons designated, and they are not only named but referred to in the concluding clause as "above named." These circumstances would not, however, be sufficient to overcome a contrary intent shown by the provisions of the will. *Boles v.*

*Smith,* supra; *Warner's Appeal,* 39 Conn. 253; *Mitchell* v. *Mitchell,* 73 Conn. 303, 307, 47 Atl. 325. The essential question is, did the testatrix look upon the persons named as a group or as individuals? What her intent was in this regard might appear from other provisions of the will, as was the case in *Bolles* v. *Smith,* supra; but in this instance we find nothing in the paragraphs of the will other than the twenty-third to indicate her intent to make a class gift. On the contrary, it is not without significance that in two earlier paragraphs she did use general language descriptive of a class, in making certain bequests of personal property, one to "my first cousins, grandchildren of Grandson and Nancy Hurd" and the other to "my cousins now residing in the State of Connecticut, grandchildren of Abner and Lucy Seeley." See *Webster* v. *Welton,* 53 Conn. 183, 184, 1 Atl. 633.

In the absence of other circumstances indicative of the testatrix's intent, one would expect to find that where a gift to a class was intended the members of the group would have some characteristics common to all and sufficient to distinguish the group as a whole from other individuals or groups. While the persons named in the paragraph are described as the grandchildren of Abner and Lucy Seeley, that cannot be the distinguishing element of a group, because a comparison of the persons named in this paragraph with those named in the order of distribution made by the Court of Probate under the sixteenth paragraph, which was a gift to each of the grandchildren of Abner and Lucy Seeley, shows that there were two of these grandchildren who were not mentioned in the twenty-third paragraph. To construe the words stating the residence of persons named, "residing in Connecticut" and "now residing in the city of Boston" as intended to establish a necessary characteristic of the group who were to

receive the testatrix's bounty, rather than as merely descriptive, would produce the result that if any one of the persons designated had departed from Connecticut between the making of the will and the death of the testatrix, or, as regards the last clause of the paragraph, the death of the husband to whom was given a life use of the money there bequeathed, that one could not share in the residue, despite the fact that he or she was expressly named. Certainly the words applied to Eli Seeley, "now residing in the city of Boston," can hardly be regarded as more than descriptive, and it is not likely that the testatrix would in the making of a class disregard residence as an element in reference to him and make it a necessary condition in reference to others. That her thought was not centered upon residence in Connecticut, as regards the group, or indeed, as is suggested to include Eli Seeley, in New England, is indicated by the substitutionary gift, should any of those named die, to his or her "direct descendants" for these of course might reside anywhere in or out of New England.

In short, the will discloses no distinguishing characteristic common to those named and indicative of an intent to make it a basis for designating them as a group. The testatrix apparently thought that, by the substitutionary gift to the "direct descendants" of the persons named she had effectually provided against any part of the property becoming intestate; and that provision is in itself suggestive that she had not in mind a right of survivorship among the persons named. There is no sufficient indication of any intent on the part of the testatrix to make the gift in this paragraph one to a class and the trial court was in error in holding to the contrary.

The share which Mary Seeley would have taken had she lived did not go to the survivors of those

named. As this share was a portion of the property devised and bequeathed in the residuary clause, it became, by reason of her death before the testatrix, leaving no issue, intestate estate. *Daboll* v. *Daboll,* 101 Conn. 142, 147, 125 Atl. 253. The testatrix's husband made no claim in the trial court to a share in this property and it is not necessary to consider whether or not, in view of his election to take his statutory share in the estate in lieu of the provisions made for him in the will, he was entitled to any part of it.

There is error and the case is remanded to be proceeded with according to law.

In this opinion the other judges concurred.