### THE GUILFORD INSTITUTE*
*vs.*
### FRANCIS A. PALLOTTI, ATTORNEY GENERAL

Superior Court    New Haven County    File No. 58645

* *See, also, Guilford Institute vs. Pallotti,* 8 Conn. Sup. 299.

MEMORANDUM FILED FEBRUARY 17, 1941.

*Beers & Beers,* and *George C. Conway,* of New Haven, for the Plaintiff.

*Francis A. Pallotti,* Attorney General, and *Harry L. Brooks,* Assistant Attorney General, for the Defendant.

BALDWIN, J.  On the 21st day of August, 1854, Sarah

Griffing of Guilford conveyed to the trustees of the Guilford Institute a piece of land located in Guilford, bounded south by York Street, east and north by highway and west by an avenue and land of Rev. E. E. Hall, to be held by them and their successors in trust forever for the uses and purposes prescribed in the deed conveying the land described.

In connection with the conveyance of the land this donor also gave to the trustees $10,000 for the purposes described in the deed of trust and thereafter she gave an additional sum of nearly $2,000.

The trustees accepted the gift of the land and this fund, and employed a part of the fund in the erection of a substantial school building of stone on the land donated. Thereafter Simeon B. Chittenden, then of Guilford, gave to the trustees $10,000, and later, one Sarah B. Cone gave $10,000, and Clara J. Sage, in her will, gave $3,000.

Some losses have been experienced so that now the fund approximates $22,000, together with the land and the building thereon.

There were seven original trustees, residents of Guilford, and they were incorporated under a special act at the May session of the General Assembly in the year 1855, under the name of "The Guilford Institute."

The deed of trust recited the following objects in the conveyance of the land and the gift of the original donor; ".... for the purpose of establishing and maintaining a school in said Guilford, of a higher order than district or common schools, and so much of said fund as is required, is to be expended in erecting and furnishing suitable buildings, apparatus, etc., therefor, .intending said school for the instruction of males and females in the higher branches of education.

"And whereas my wish is that said school should in no sense be regarded as a Sectarian institution but be open alike to all who wish to enjoy its advantages, and on the same terms, yet as it must necessarily be under some government and control, and as more harmony·will be likely to prevail, if all the directors or Trustees are of the same religious views, my wish is that they shall belong to the denomination to which I belong, to wit, of the Congregational order, and of that class designated and known at the present day as orthodox or

trinitarian, of which the pastor of the first Church in Guilford shall always be one, should he hold such religious views or belief.

"And whereas my further wish is that the Bible should always be used in said school as the foundation of all education for usefulness or happiness. Now therefore, the above appropriation and this conveyance of said premises are made, to be held and used by the Grantees, their successors and assigns forever, subject to and in accordance with the spirit and intent of the appropriation as above specified and set forth."

The Guilford Institute was formally opened in 1858, and it operated independently, instructing pupils in branches of learning higher than those then taught in the district or common schools, until 1873, when some of its income began to fail and it did not have sufficient to carry on. The Union District of Guilford then entered into an arrangement with the trustees under which students resident in that district entered and attended the institute without having to pay for their tuition, the district paying the deficit for its maintenance and operation resulting from insufficient income from the fund held by the trustees.

This arrangement continued until 1890, when the Town of Guilford and the trustees entered into an arrangement under which pupils residing in the town could attend and enjoy instruction without paying tuition, the town making up the deficit, the trustees simply turning over the income from the fund held by them, and this arrangement continued until 1935, when the town constructed a new high school. This high school is modern and it and its grounds are ample in all respects for the present and some time to come.

Since the new high school has been in operation the institute has not functioned. Its income, annually, is somewhere between $700 and $900. This income is inadequate for the support and maintenance of an institution of learning. The building is antiquated and not at all suitable for present day needs of such an institution. Its grounds are inadequate and not well located for school purposes and conditions have so changed that there no longer exists any need for the continuance of the maintenance and operation of the institute as a separate entity, and its continuance as such would serve no useful purpose and would be wholly impractical. Its present maintenance is simply a source of expense.

The plaintiff has brought this action in which it asks for a declaratory judgment asking advice as to its powers and duty in respect to the assets which it holds.

This brings us to a consideration of the doctrine of approximation since, because changed conditions, in the period of time which has elapsed since the original donation was made, have rendered it not only impractical but impossible to maintain and operate the institute as a separate entity.

In *Newton vs. Healy, Attorney General,* 100 Conn. 5, 10, 122 Atl. 654, 655, the court said: "It is now certain that the Superior Court, as a court of equity, possesses the power to carry out the general intent of the donor of a testamentary charitable trust, when clearly manifested, though the particular form or manner pointed out by the testator cannot, because of changed conditions, be followed." That case was cited in *Shannon vs. Eno,* 120 Conn. 77, 87, 179 Atl. 479, 483. *See, also, Seymour vs. Attorney General,* 124 Conn. 490, 498.

The doctrine of approximation does not require that the accomplishment of the intent of the donor in the way planned by the donor should be impossible, but proof of facts evincing impracticability may be sufficient to bring the case within the doctrine. *Seymour vs. Attorney General, supra,* 498, 499.

In *Seymour vs. Attorney General, supra,* at page 499, the court said: "It should, however, be borne in mind that 'in exercising its power under the doctrine of approximation, a court seeks just as nearly as may be to effectuate the intent of the testatrix.' *Shannon vs. Eno, supra,* 89."

Since the court seeks, just as nearly as may be, to effectuate the intent of the donor, we must examine the instrument under which the donation was made and which prescribed its use and purpose. Here we find that it was "for the purpose of establishing and maintaining a school in said Guilford, of a higher order than district or common schools, and so much of said fund as is required, is to be expended in erecting and furnishing suitable buildings, apparatus, etc., therefor, intending said school for the instruction of males and females in the higher branches of education.

"And whereas my wish is that said school should in no sense be regarded as a Sectarian institution but be open alike to all who wish to enjoy its advantages, and on the same terms,"

and then in the instrument she proceeds to express her opinion that more harmony will prevail if the trustees are all of the same religious views, and then her wish that they should be of the Congregational denomination, known as orthodox or trinitarian, which was the religious denomination to which she belonged.

This was a charitable donation; it was for educational purposes, and the dominant intent of this original donor was that the school property and the income of the fund she had created should be used for instruction in branches of education, in Guilford, higher than those taught there in district and common schools, to males and females of all denominations who wish to enjoy its advantages, without any discrimination as to race, creed, color, social, financial or any other quality or condition.

The school property is no longer practicable for use as such. It should be sold by the trustees for the best price and upon the best terms obtainable and the proceeds of such sale should be added to and become a part of the permanent endowment fund now held by the trustees and invested in accordance with the laws of the State relating to the investment of trust funds. See General Statutes (1930) §5925; *Bankers Trust Co. vs. Greims,* 108 Conn. 259, 267, 142 Atl. 796.

The plaintiff has suggested and asked for authority to use the fund in one or more of several different ways. Subdivision C of paragraph 12 of the amended complaint more nearly approaches the doctrine of approximation, as applied by the courts, than does any of the other suggestions.

The trustees are advised to donate the income from the fund to the Board of Education of the Town of Guilford to be used by it for the improvement and maintenance of the high school in the town.

A declaratory judgment in accordance herewith may enter for the plaintiff, without costs.